ROBERT ADES, demandante y recurrido, *v.* HARRY ZALMAN y
OTROS, demandados; LIC. LUIS ROBERTO SANTOS MON-
TALVO, peticionario.

*Número:* O-84-165 *Resuelto:* 6 de junio de 1984

*Enrique Alcaraz Micheli,* de *Ferrer & Alcaraz,* abogado del peticionario; *Frank Gotay Barquet,* de *Feldstein, Gelpí & Hernández,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

¿Puede ser sometido a la toma de una deposición por la parte contraria el abogado que representa en una causa judicial a uno de los litigantes?

Robert Ades demandó en el Tribunal Superior, Sala de Mayagüez, a Harry Zalman, Samuel Sherman, Perfect Jacket Manufacturing Co., Perfect Shirt Company, Lico Corporation y Brass Uniforms, Inc., por alegado incumplimiento de obligaciones contractuales y fiduciarias. Las tres

últimas corporaciones están representadas por el Lic. Luis Roberto Santos Montalvo. Éste, el 25 de enero de 1984, fue notificado de una toma de deposición por los abogados de Ades. El aviso requirió los siguientes documentos:

1. Todos y cada uno de los cheques cancelados, recibos, copias de giros, o cualquier otro documento que evidencie el pago o pagos hechos al Lcdo. Eudaldo Báez Galib por servicios a las corporaciones Lico Corp., Perfect Shirt, Inc. y Brass Uniforms, Inc.

2. Todos y cada uno de los contratos, copias de licencias, afidávits, o cualquier otro documento que evidencie la venta o traspaso, incluyendo lo relativo al precio cobrado y pagado, de los cuatro vehículos propiedad de las codemandadas Lico Corp., Perfect Shirt, Inc. y Brass Uniforms, Inc., cuya venta fue hecha por el licenciado Luis Roberto Santos.

3. Todos y cada uno de los cheques cancelados, copias de giros, recibos o cualquier otro documento relacionado con el desembolso, utilización o transferencia de los dineros obtenidos de la venta de los automóviles a los cuales se hace referencia en el párrafo anterior.

4. Todos y cada uno de los cheques cancelados, copias de giros, recibos o cualquier otro documento que evidencie pagos hechos por el Lcdo. Luis Roberto Santos al Negociado Federal de Rentas Internas ("Internal Revenue Service") por concepto de contribuciones, penalidades o intereses adeudados por Lico Corp., Perfect Shirt, Inc. y Brass Uniforms, Inc.

5. Todos y cada uno de los libros de contabilidad, minutas, récords corporativos, listados de equipo y maquinaria de Lico Corp., Perfect Shirt, Inc. y Brass Uniforms, Inc.

6. Expedientes de todos y cada uno de los casos seguidos por y en contra de Lico Corp., Perfect Shirt, Inc. y Brass Uniforms, Inc. en los cuales éstas fueron representadas por el Lcdo. Luis Roberto Santos.

El licenciado Santos se opuso y como medida protectora solicitó que se dejara sin efecto dicha citación. Adujo que toda "la información requerida . . . , con excepción de la mencionada bajo el número 6, surgen o deben surgir de los libros corporativos de las tres compañías demandadas, los cuales pertenecen y están bajo la custodia de dichas corporaciones y

de sus oficiales *y no de su abogado*". (Énfasis nuestro.) En cuanto a los expedientes de casos reclamó ser "el producto del trabajo del abogado y además conte[ner] información" privilegiada. Instancia se negó. El licenciado Santos acudió ante nos. En auxilio de nuestra jurisdicción paralizamos los procedimientos en dicho foro. La comparecencia de ambas partes nos permite decidir prontamente bajo la Regla 50 del Reglamento.

## I

No se cuestiona que la toma de una deposición es un método aceptado de descubrimiento de prueba consagrado en la Regla 27 de las de Procedimiento Civil.[1] Ha sido definida como aquella "declaración que precediendo juramento (en la actualidad se le ha substituido por la promesa de decir verdad) se recibe al reo, o testigos u otro en alguna causa civil o negocio civil. Llámese deposición, porque depone, asienta o afirma lo que ha llegado a su noticia, o sobre lo que se le pregunta". E. Pallares, *Diccionario de Derecho Procesal Civil*, 14 ed., México, Ed. Porrúa, 1981, pág. 234. Su razón de ser responde al enfoque moderno "de destruir de una vez y para siempre la deportiva teoría de justicia. Un pleito no debe continuar siendo una batalla de talentos entre los abogados. Las partes deben poner las cartas sobre la mesa antes del juicio, ya que 'cualquier parte puede obligar a la otra a revelar cualesquiera hechos que

---

[1] En lo pertinente la Regla 27.1 reza:

"(a) Luego de iniciado un pleito, cualquier parte podrá tomar el testimonio de *cualquier persona*, incluyendo el de una parte, mediante deposición en forma de examen oral, sin permiso del tribunal, excepto que el demandante no podrá tomar ninguna deposición sin permiso del tribunal dentro de los veinte (20) días siguientes a la fecha del emplazamiento del demandado. Si el demandado inicia cualquier tipo de descubrimiento dentro del referido plazo, dicha limitación no será de aplicación. Los testigos podrán ser obligados a comparecer mediante citaciones expedidas de acuerdo con las disposiciones de la Regla 40. La deposición de una persona que esté recluida en prisión podrá ser tomada solamente con el permiso previo del tribunal, bajo las condiciones que éste prescriba." (Énfasis nuestro.)

tenga en su poder'". *Shell Co. (P.R.) Ltd.* v. *Tribl. de Distrito*, 73 D.P.R. 451, 461 (1952).

Hoy día se reconoce universalmente que la información poseída por cada parte no es de su exclusiva propiedad. Así, a través de los distintos mecanismos sobre descubrimiento de prueba puede lograrse limitar las cuestiones a dilucidarse y circunscribir la presentación de evidencia durante el juicio a aquellas en controversia u obtener evidencia adicional, o información que sirva de pista para encontrarla. En síntesis, el derecho al descubrimiento de prueba es uno "amplio y liberal". *Rivera Alejandro* v. *Algarín*, 112 D.P.R. 830 (1982). Aún así, admite justificadas excepciones. Ya en *Zaragoza* v. *Tribl. Superior*, 78 D.P.R. 447, 451 (1955), citando al comentarista Moore, habíamos anticipado "en vista del derecho ilimitado de descubrimiento otorgado por la Regla 26 [actual Regla 27 nuestra], raras veces se presentarán situaciones en que una orden al efecto de que la deposición no sea tomada ha de resultar apropiada. Semejante orden no debe ser dictada a menos que exista 'justa causa' (*good cause*), requiriéndose un caso convincente para que se niegue totalmente a una parte el derecho a tomar una deposición". Ante una situación de ese género, en *Rivera Alejandro* v. *Algarín,* supra, pág. 833, advertimos que la regla sólo excluye materia privilegiada y la que no sea pertinente al asunto en controversia. Véase M. R. Aguiló, *Modificación al descubrimiento de prueba en las nuevas Reglas de Procedimiento Civil,* 74 Rev. Der. Puertorriqueño 235 (1979).

Con estos horizontes decisorios en mente evaluemos el reclamo del licenciado Santos basado en que es abogado que representa partes en litigio.

## II

Lo primero que advertimos es que la Regla 27.1, antes transcrita, no contiene limitaciones respecto a quiénes se les puede tomar deposiciones. Autoriza el examen a

"cualquier persona". Por ende, teóricamente no excluye al abogado de uno de los litigantes. Sin embargo, la naturaleza adversativa en que se cimenta nuestro sistema adjudicativo y el alto grado de participación intrínseca y envolvimiento del abogado en los procesos, como asesor clave y confidente de una parte, invita a ciertas reflexiones en torno a la dinámica viva que conlleva la práctica forense. Después de todo, el "derecho no es una exótica flor de invernáculo, ni una estructura fósil, ni un sarcófago. Pero, tampoco es un producto de laboratorio. Es todo un proceso histórico, vital. Es vida, que sigue proyectándose en el presente y es también presente preñado de futuración". J. B. Iturraspe, *Función Social de la Abogacía*, 2da ed., Sante Fe, Argentina, Ed. Castellví, 1967, pág. 47.

En *Pereyó v. López et al.*, 22 D.P.R. 780, 783 (1915), citando el Diccionario de Legislación y Jurisprudencia, en términos generales definimos al abogado como aquel "que defiende causa o pleito suyo o ajeno, demandando o respondiendo; pero según el estado de nuestra legislación, es el profesor de jurisprudencia que con título legítimo se dedica a defender en juicio por escrito o de palabra los intereses o causas de los litigantes". Por ende, al ser consultado y contratado toda persona deposita en él su más absoluta confianza. Basado en esa relación fiduciaria le comunica intimidades personales, de negocios, etc., presta declaraciones y entrega documentos y valores. De ordinario se establece una relación muy estrecha y singular. *Colón Prieto v. Géigel*, 115 D.P.R. 232 (1984). En lo que atañe al recurso, para proteger ese vínculo tan íntimo, la Regla 25 de Evidencia establece el privilegio de abogado-cliente, también denominado secreto profesional. Fundado en serias consideraciones de política pública propicia crear un ambiente de seguridad en toda comunicación profesional. La rúbrica legal es de confidencialidad. El deber de guardar el secreto profesional es de tal importancia, que como afirma el decano Cisnero, "si desapareciera, la profesión estaría destinada a perecer". Citado

en M. Gómez Calvo, *El Secreto Profesional en la Abogacía*, 11 Rev. Cs. Jur. Univ. Costa Rica 229 (1968). Al decir de Parry, la defensa "[d]eja de ser libre si el abogado, transformado en testigo, es obligado a la divulgación pública de lo que ha sabido gracias al secreto profesional". A. E. Parry, *Ética de la Abogacía*, Argentina, Ed. Jur. Argentina, 1940, T. I, pág. 251.

■ Esta especial relación tiene además una dimensión y un fundamento ético. El Canon 22 del Código de Ética reconoce la necesidad de que el abogado no sea parte ni incorporado al elemento probatorio. Reza: "Excepto cuando sea esencial para los fines de la justicia, el abogado debe evitar testificar en beneficio o en apoyo de su cliente. Cuando un abogado es testigo de su cliente, excepto en materias meramente formales, tales como la comprobación o custodia de un documento y otros extremos semejantes, debe dejar la dirección del caso a otro abogado." El desalentar la participación del abogado como elemento evidenciario en un pleito va dirigido no a tronchar, sino a robustecer, esa seguridad anhelada por el cliente. Evita en lo posible mezclar la función del abogado con el papel de un testigo. Véase R. H. Viñas, *Ética y Derecho de la Abogacía y Procuración*, Buenos Aires, Ed. Pannedille, 1972, págs. 207–211.

■ El binomio abogado-testigo se acepta en la jurisdicción federal. La norma general es que "la condición de ser abogado no crea una inmunidad contra deposiciones, y por lo tanto, bajo ciertas circunstancias una parte puede deponer a un abogado de la parte contraria, sujeto a las objeciones por privilegio. Sin embargo, la toma de deposición de un abogado no es común". 10 Fed. Proc., L. Ed., Sec. 26:104 (1982). Igual criterio siguen el *Shepard's Manual of Federal Practice*, 2da ed. (1979); 4A *Moore's Federal Practice*, 2da ed. (1984); 3 Kooman, *Fed. Civ. Prac.* (1970); 7 Cyc. Fed. Proc., 3ra ed. (1971).

Este enfoque, aunque plural, no es unánime. Existen variantes que responden a distintas preocupaciones judicia-

les dignas de ser conocidas. En *In re: Arthur Treacher's Franchisee Litigation*, 92 F.R.D. 429 (1981), el tribunal concluyó que lo más apropiado, bajo una situación similar, era sustituir el requerimiento sobre una deposición oral por una escrita. Más aún, en *Draney* v. *Wilson*, 30 FR Serv2d 960 (1980), se negó bajo el siguiente razonamiento: "Permitirle a un abogado convertirse en el inquisidor del abogado de la parte contraria, conllevaría el agudo riesgo de añadirle un elemento más a las tensiones que se crean en un proceso adversativo entre los representantes legales. La deposición a un abogado de récord sólo será permitida ocasionalmente y sólo cuando sea mostrada justa causa." (Traducción nuestra.) Véase además *Walker* v. *United Parcel Services*, 87 F.R.D. 360 (1980).

Nos encontramos, pues, ante una doble y compleja acumulación de funciones por un abogado: actividad representativa forense y la testifical. Por ende, las inquietudes mencionadas no pueden tomarse a la ligera. Según Don Ángel Osorio, "la materia referente al secreto profesional de los abogados es gravísima; que aparecen en pugna constante el derecho del cliente a la reserva y el derecho de la Justicia a buscar la verdad; que el abogado puede ser un sacerdote o un encubridor; y que cada caso ofrece matices, sutilezas y detalles que son imposibles de prevenir". Citado en Gómez Calvo, *op. cit.*, págs. 239–240.

Además, la cuestión sobre el posible confrontamiento directo entre abogados y un potencial de situaciones irritantes, no pertenece al mundo de lo teórico. Al igual que en otras latitudes, el foro puertorriqueño aglutina diferentes especies de temperamentos (también detectable entre los miembros de la judicatura). Ello se traduce en la forma de postular.

Las cualidades humanas del abogado son, como es obvio, elementos imprescindibles de su personalidad y se traducen de varias maneras en el desarrollo de la actividad profesional. De ello resulta un cuadro lleno de luces y de sombras en el que

la persona del abogado emerge con sus virtudes y defectos y se individualiza bajo estos dos aspectos. *Candian* ha diseñado un vivo bosquejo y vale la pena relatarlo brevemente. Este autor ha diferenciado al abogado "atrabiliario", escorbútico y permanentemente irritado; al lleno de autosuficiencia y persuadido de que es el único depositario de la verdad jurídica, la "vestal del Derecho"; al fraudulento, del que es preciso desconfiar, y al condescendiente, dispuesto a renunciar a una excepción procesal para favorecer al colega distraído, con la pretensión de obtener de éste un trato de reciprocidad en la primera ocasión, y, finalmente, al abogado "atérmico", frío, sutil, distante y probablemente mal colega. Existe también el "superhombre invencible", que se comporta como contrario inmodesto y prepotente. Finalmente, *Candian* pasa a tratar los rasgos de otros tipos o temperamentos de abogados en atención a sus dotes de iniciativa personal en el desempeño de su actividad profesional. Así, distingue al abogado "intervencionista" del que se perfilan algunos subtipos, como el intervencionista habitual (¡el peor de todos!) y el ocasional y opuestamente al no intervencionista, es decir, al neutralista y, junto a él, al "pseudoneutralista".

A este complejo cuadro, pintado magistralmente con sutil ironía, se puede oponer otro de distinto y más agradable colorido, pues, si bien sus sujetos no son muy numerosos, debemos dar fe de que existe el abogado entusiasta de su profesión, enamorado de la causa y de las cuestiones jurídicas inherentes a ella, de las que habla con todos sus colegas; existe el abogado altruista, dispuesto a renunciar de buen grado a sus honorarios en los casos "piadosos"; existe también el abogado fraternal, que ayuda al colega inexperto o imposibilitado. Existe, por tanto, en el mundo de la profesión forense toda una humanidad en la que se mueve un microcosmos de pasiones, de ideales, de intereses y de sentimientos, que se sintetiza en la persona de un hombre que tiene el deber de asistir, defender y sostener a otro hombre que se encuentra en condiciones de necesidad y que se ve forzado a reclamar su ayuda; o bien, a asistir a otro sujeto cualquiera (una entidad, una empresa, una sociedad) cuyos intereses deben ser igualmente tutelados. En todo caso, el abogado tiende a realizar dentro de sus posibilidades una justicia material, superior a la formal, sirviéndose de los instrumentos. más diversos en relación con su personalidad y con su temperamento. De aquí que el arte forense se

manifieste con formas poliédricas, pero todas ellas impregnadas de humanidad. (Escolios omitidos.) C. Lega, *Deontología de la Profesión de Abogado*, España, Ed. Civitas, 1976, págs. 43–44.

 El ideal de justicia aborrece los extremos. Se presta a abusos. Tales abusos en el uso de los mecanismos sobre descubrimientos de prueba es una posibilidad real. Para curarlos no existen recetas mágicas ni antídotos instantáneos. Las modalidades varían. "El término 'abuso de descubrimiento de prueba' ha sido utilizado como un concepto único, pero incluye diversos aspectos. Así, es adecuado subdividir 'abuso' en 'uso impropio' y 'sobreutilización'. Cuando nos referimos a 'uso impropio', incluimos no sólo las violaciones directas a la regla, como faltar a responder a un requerimiento de descubrimiento dentro del tiempo límite establecido, sino también a más sutiles intentos de acosar u obstruir al oponente, como darle respuestas inadecuadas o requerirle información que claramente se encuentra fuera del ámbito del descubrimiento. Por 'sobreutilización' se entiende inquirir más información de la necesaria o apropiada para ese caso en particular. 'Sobreutilización', por su parte, puede ser subdividida en problemas de 'profundidad' y de 'extensión'; con 'profundidad' nos referimos a requerimiento de descubrimiento de materia que podría ser relevante pero que es simplemente excesiva, y por 'extensión' nos referimos al requerimiento de descubrimiento que va a materias demasiado remotas del caso." (Traducción nuestra.) C. A. Wright, *Law of Federal Courts*, 4ta ed., St. Paul, Minnesota, West Pub. Co., 1983, pág. 542.

Estamos conscientes de que el reconocer de manera absoluta la prerrogativa de llamar a deponer a un abogado del litigante contrario, para que declare sobre aspectos del caso y produzca determinados documentos, puede convertirse en un medio mortificante, abusivo y opresivo no sólo hacia ese abogado, sino hacia su representado. Podría además tener la consecuencia de que un número sustancial, si no todas las

preguntas formuladas, fueran apropiadamente objetadas bajo el fundamento del privilegio abogado-cliente. Ello trastocaría el curso ordinario de la litigación normal. Causaría dilaciones innecesarias.

## III

Nuestro sistema de justicia se erige en la esencial igualdad de todos los seres humanos. Rechaza toda noción de ventaja y favoritismo. *San Lorenzo Trad., Inc.* v. *Hernández,* 114 D.P.R. 704 (1983). El abogado no es la excepción.

Ante la disyuntiva expuesta y los intereses legítimos en conflicto —permitir a un litigante descubrir el mayor número de elementos evidenciarios, *versus* el interés público de proteger al máximo el ejercicio libre de la función de abogado— adoptamos como regla reconocer cualificadamente el derecho a tomar una deposición de un abogado de una parte, siempre que previa y adecuadamente se establezca "justa causa". Esta medida (*test*) exige un estricto y ponderado escrutinio de los tribunales. Tiende a evitar que se produzcan rozamientos y tensiones innecesarias. Como elemento determinante el foro judicial debe tratar de detectar si la información que se busca descubrir a través del abogado es susceptible de ser obtenida de otras personas o medios menos onerosos y complejos. De existir otras fuentes de información accesibles y aptas debe prescindirse de ese curso de acción. Sin embargo, una vez establecida satisfactoriamente "justa causa", el abogado puede ser requerido a deponer. En esa eventualidad el examen y descubrimiento se extiende a toda materia pertinente, no privilegiada, y que no sea "producto de su trabajo (*work product*)".[2] Sin embargo, para "atemperar el rigor de toda citación de este género, los interesados deben coordinar, o en su defecto el Tribunal dic-

---

[2] Regla 23.1(b):

". . . Estarán fuera del alcance del descubrimiento las impresiones mentales, conclusiones, opiniones o teorías legales sobre el caso, del abogado o de cualquier otro representante de una parte."

tar, la fecha, hora y sitio y demás condiciones que propendan a garantizar el menor de los perjuicios al deponente". *San Lorenzo Trad., Inc.* v. *Hernández,* supra, pág. 720.

Al aplicar los principios expuestos al caso de autos, observamos que el aviso de toma de deposiciones al abogado Santos esencialmente consiste y va acompañado del requerimiento de un sinnúmero de documentos relacionados con los negocios y actividades comerciales de las corporaciones Perfect Shirt Co., Lico Corporation y Brass Uniforms, Inc. Es innegable que estos documentos pueden ser obtenidos por otros medios procesales. El demandante Ades, como promovente, no ha demostrado, con justificación en esta etapa, la necesidad de la deposición. El examen de los expedientes de casos que están bajo el control del abogado, de ordinario está fuera del escrutinio forense como "producto del trabajo".(3) La información relevante sobre éstos a menudo está disponible a través de los récords originales en las secretarías de los distintos tribunales. Para orientar su búsqueda basta conocer el número de radicación y acudir a la dependencia judicial.

En estas circunstancias, *debe dictarse sentencia que deje sin efecto la resolución del tribunal de instancia que ordena deponer al licenciado Luis Roberto Santos Montalvo, sin menoscabo de que continúen los procedimientos ante dicho foro compatibles con lo aquí resuelto.*

El Juez Asociado Señor Torres Rigual no intervino.

---

(3) "El producto de la labor del abogado (*work product*) consiste de esa información que él ha reunido y las impresiones mentales, teorías legales y estrategias que él persigue o ha adoptado, derivadas de entrevistas, declaraciones, memorándum, correspondencia, resúmenes, investigaciones de hechos o de derecho, creencias personales y otros medios tangibles o intangibles." *State ex rel. Dudek* v. *Circuit Court for Milwaukee County,* 150 N.W.2d 387 (1967). Para una exposición más profunda de este concepto véanse: *Hickman* v. *Taylor,* 329 U.S. 495 (1947); 35 A.L.R. 3d 412; E. M. Boyle, Comentario, *Discovery—The Work Product Protection,* 13 U. Kan. L. Rev. 125 (1964); A. B. Lafrance, *Work-Product Discovery: A Critique,* 68 Dick. L. Rev. 351 (1964); V. K. Yamaguchi, *Discovery and the Work Product Doctrine,* 11 Loy. U. Chi. L.J. 863 (1980); D. G. Wills, *Waiver of the Work Product Immunity,* 1981 U. Ill. L. Rev. 953 (1981); R. D. Stokes, *Discovering Investigative Reports Under the Work Product Doctrine,* 34 Baylor L. Rev. 156 (1982).