TEXTO COMPLETO DE LA RESOLUCION
Mediante recursos de certiorari consolidados, las peticionarias Plaza Las Américas, Inc., Fringe Area, S.E., Fringe Area (II), S.E., Empresas Fonalledas, Inc., (en adelante denominaremos a estas 4 entidades en conjunto e indistintamente como Plaza) y Kmart Corporation (en adelante Kmart), solicitan que revisemos la resolución del Tribunal de Primera Instancia, Sala Superior de San Juan, de fecha 4 de mayo de 2000.
*836 La peticionaria Plaza plantea que erró el foro de instancia al denegar la solicitud instada por ella y Kmart para que se dictara sentencia sumaria desestimando el pleito de epígrafe; al declarar No Ha Lugar mociones in limine mediante las cuales Plaza solicitó la exclusión de evidencia extrínseca sobre intención contractual a ser presentada por el recurrido, Pueblo International, Inc. (en adelante Pueblo), durante vista evidenciaría; al emitir orden protectora para que no se tome deposición a uno de los socios del bufete que representa legalmente a Pueblo, Ledo. Donald Hull; y al limitar a uno (1) el número de peritos a ser presentados en la vista evidenciaría por cada parte.
Por su parte, Kmart plantea idénticos errores que los señalados por Plaza, excepto el pertinente a la orden protectora que prohíbe la deposición del Ledo. Hull, dictamen del cual no recurre.
A la luz de las constancias del expediente, el derecho aplicable y las posiciones de las partes, procede denegar el recurso instado.
I
El 22 de junio de 1989, Pueblo y Plaza suscribieron contrato de arrendamiento de un solar en los predios del Centro Comercial Plaza Las Américas. Plaza, como arrendadora, se comprometió a no permitir la operación, excepto por Pueblo, de ningún supermercado, "grocery or convenience store", en los predios del centro comercial. Dicho contrato fue ratificado y elevado a escritura pública el 15 de febrero de 1991.
Tras varios incidentes procesales, Pueblo presentó ante el Tribunal de Primera Instancia un escrito titulado "Segunda Demanda Enmendada", en el cual alegó que Plaza, en violación de la cláusula contractual de exclusividad pactada, está permitiendo la operación por la demandada-peticionaria Kmart de un área denominada "Pantry" -en los predios del centro comercial-, área que, según Pueblo, reúne los atributos de un "supermarket, grocery or convenience store". En la demanda se alegó interferencia torticera de Kmart en las relaciones contractuales entre Pueblo y Plaza, por razón de ésta realizar dichas operaciones, con conocimiento de la referida cláusula de exclusividad.
Pueblo reclamó cumplimiento especificó del contrato y los daños y perjuicios sufridos como resultado de las prácticas descritas. Además solicitó la expedición de una orden de interdicto a los fines de "compeler a Plaza a tomar las acciones necesarias para hacer cumplir su obligación contractual, y de esta manera restituir la exclusividad de Pueblo como único establecimiento autorizado a operar un supermercado, tienda de comestible o de conveniencia en el centro comercial,” y para compeler a Kmart a "cesar de interferir en la relación contractual de Pueblo y Plaza instruyéndole que cese de operar un supermercado, tienda de comestibles o de conveniencia en su tienda Big Kmart de Plaza Las Américas". 
Plaza y Kmart contestaron la segunda demanda enmendada presentada por Pueblo y se demandaron entre sí como co-partes. Luego de varios trámites procesales, el foro de instancia emitió la resolución recurrida. En dicha resolución, el Tribunal de Primera Instancia dispuso de varios asuntos pendientes ante su consideración. 
En virtud de lo anterior, las peticionarias recurren ante nos planteando en sus respectivos recursos los errores antes señalados. Además, presentaron mociones en auxilio de jurisdicción solicitando la paralización de los procedimientos en instancia, hasta la final resolución de los recursos.
Surge de los autos que durante conferencia sobre el estado de los procedimientos del caso celebrada el 9 de junio de 2000, el tribunal a quo ordenó la paralización de los procedimientos ante la solicitud de Plaza y Kmart a esos efectos, luego de informarle que habrían de recurrir de la resolución dictada ante este foro apelativo.
Así las cosas, mediante resolución de 27 de junio de 2000, este Tribunal sostuvo el dictamen emitido por el Tribunal de Primera Instancia sobre la paralización de los procedimientos y ordenó la consolidación de los *837 recursos.
II
En primer lugar, trataremos el asunto pertinente a la moción de desestimación instada por la peticionaria Plaza y a la que se unió Kmart, la cual fue declarada No Ha Lugar por el foro de instancia. Procede, pues, exponer las normas que rigen el mecanismo de sentencia sumaria.
La Regla 36.2. de las de Procedimiento Civil vigentes autoriza a cualquier parte contra la cual se haya formulado una reclamación, a presentar, en cualquier momento, una moción basada o no en declaraciones juradas para que se dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de dicha reclamación. 
Sólo debe dictarse sentencia sumaria en casos claros, cuando el tribunal tenga ante sí la verdad sobre todos los hechos pertinentes y determine que no es necesaria una vista evidenciaría. Rivera Rodríguez v. Departamento de Hacienda, Op. de 17 de septiembre de 1999, 99 J.T.S. 144; Audiovisual Language v. Sistema Estacionamiento Natal Hermanos, Op. de 15 de diciembre de 1999, 97 J.T.S. 147; Piñero v. A.A.A., Op. del 23 de octubre de 1998, 98 J.T.S. 140; Roth v. Lugo, 87 D.P.R. 386 (1963); Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714 (1986); Cuadrado Lugo v. Santiago Rodríguez, 126 D.P.R. 272 (1990).
La sentencia sumaria tiene como objetivo principal, la terminación de una controversia sin la necesidad de que se celebre juicio. Por consiguiente, la moción solicitando que ésta se dicte, obliga a que se presente prueba que se utilizaría durante el juicio en respaldo de las alegaciones, la que de no ser adecuadamente refutada, permite que se disponga el pleito a favor de alguna de las partes. Cuadrado Lugo v. Santiago Rodríguez, supra.
Sólo debe concederse este remedio cuando se haya establecido, claramente, el derecho del que la solicita y se haya demostrado que la otra parte no tiene probabilidad de prevalecer bajo ninguna situación que surja de las alegaciones no refutadas por los documentos presentados con la moción. Soto v. Hotel Caribe Hilton, 137 D.P.R. 294 (1994); J.A.D.M. v. Centro Comercial Plaza Carolina, 132 D.P.R. 785 (1993).
Al resolver una moción de sentencia sumaria, todas las inferencias que puedan surgir de los hechos expuestos en los documentos en autos, deben hacerse desde el punto de vista más favorable al que se opone a la moción, y toda duda sobre si hay hechos relevantes en controversia, debe resolverse contra la parte que solicita la sentencia sumaria. Jorge etal v. Universidad Interamericana, 109 D.P.R. 505 (1976).
De ordinario, si existen dudas sobre la procedencia de la sentencia sumaria, el Tribunal debe brindar a las partes la oportunidad de una vista evidenciaría. Cf. Rivera Rodríguez v. Departamento de Hacienda, supra; Bonilla Medina v. Partido Nuevo Progresista, Op. de 13 de marzo de 1996, 96 J.T.S. 33; Rivera et al. v. Superior Pkg., Inc. et al., 132 D.P.R. 115 (1992).
La parte que solicita la sentencia sumaria tiene que demostrar que no hay controversia real sustancial en cuanto a ningún hecho material y que procede se dicte sentencia a su favor como cuestión de ley. La parte opositora se ve entonces en posición de poner en controversia los hechos presentados por el promovente. Soto Vázquez v. Rivera Alvarado, Op. de 9 de diciembre de 1997, 97 J.T.S. 145; Pilot Life Insurance Company v. Crespo Martínez, 136 D.P.R. 624 (1994).
Una vez la moción de sentencia sumaria ha sido presentada y se sostiene en la forma provista por la Regla 36 de las de Procedimiento Civil, la parte contraria no puede descansar solamente en las aseveraciones o negaciones contenidas en su demanda, sino que viene obligada a contestar en forma tan detallada y específica, como lo hubiere hecho la parte promovente, exponiendo los hechos pertinentes a la controversia que demuestren que existe una controversia real que debe ser dilucidada en un juicio. De no hacerlo, debe dictarse sentencia sumaria en su contra, si procediere en derecho. Cf. Audiovisual Language v. Sistema de *838 Estacionamiento Natal Hermanos, supra; PFZ Properties v. General Accident Insurance Corp., 136 D.P.R. 881 (1994); Pilot Life Insurance Company v. Crespo Martinez, supra.
Al dictar sentencia sumaria, el tribunal: (1) analizará los documentos que acompañan la moción solicitando sentencia sumaria y los documentos incluidos con la moción de oposición y aquéllos que obren en el expediente del tribunal; (2) determinará si el oponente controvirtió algún hecho material o si hay alegaciones de la demanda que no han sido controvertidas o refutadas en forma alguna por los documentos. El tribunal no debe dictar sentencia sumaria cuando: (1) existen hechos materiales no controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) surge de los propios documentos que se acompañan con la moción, una controversia real sobre algún hecho material; o (4) como cuestión de derecho, no procede. PFZ Properties v. General Accident Insurance Corp., supra. El Tribunal Supremo ha reiterado que la sentencia sumaria es un remedio extraordinario discrecional que sólo debe concederse cuando no hay una genuina controversia sobre hechos materiales y el Tribunal se convence que tiene ante sí la verdad de todos los hechos pertinentes. (Enfasis nuestro) García Díaz v. Darex Puerto Rico, Inc., Op. de 20 de mayo de 1999, 99 J.T.S. 84; Audiovisual Language v. Sistema de Estacionamiento Natal Hermanos, supra.
No obstante, aunque el ejercicio de la discreción judicial al evaluar los hechos, los documentos y el derecho para decidir si se emite o no la sentencia sumaria, está reconocido en el lenguaje de la Regla 36.3. supra, y en la jurisprudencia, esa evaluación está supeditada a lo que claramente suqa del expediente en cuanto a si existen o no controversias de hechos materiales y al derecho aplicable; más aún, si se estima procedente el mecanismo sumario, hay circunstancias que militan contra ese dictamen.
De la aplicación de la normativa expuesta al caso de marras, surge que no incidió el foro de instancia al denegar la solicitud de sentencia sumaria instada por las demandadas-peticionarias, puesto que como cuestión de derecho, no procedía dictarla en favor de éstas. Veamos.
De la moción de sentencia sumaria presentada por las demandadas-peticionarias y de la oposición radicada por el recurrido Pueblo, se desprenden como hechos incontrovertidos los siguientes.
En fecha 20 de octubre de 1965, el recurrido Pueblo y la peticionaria Plaza Las Américas, Inc., suscribieron contrato de arrendamiento sobre un solar de la propiedad de ésta, ubicado en el Centro Comercial Plaza Las Américas (en adelante el centro comercial), a los fines de que el primero construyera y operara un supermercado dentro del mismo. En dicho contrato se incluyó una cláusula de exclusividad a favor de Pueblo, mediante la cual Plaza Las Américas Inc., se obligó a no permitir la operación de ningún supermercado o "grocery store" en los predios del centro comercial.
Dicho contrato de arrendamiento estuvo en vigor hasta el año 1989, cuando Plaza Las Américas Inc. y Pueblo pactaron mudar el supermercado operado por el segundo a un nuevo local, conocido como "Service Mall", y que fue construido durante la expansión del centro comercial.
Así las cosas, Pueblo, Fringe Area, (PLA) y Fringe Area (PLA) II, otorgaron otro contrato similar en fecha 22 de junio de 1989. Este último contrato vence el 3 de octubre del año 2030 y también incorporó la referida cláusula de exclusividad.
El 15 de febrero de 1991, Pueblo y Plaza elevaron el referido contrato a instrumento público ante el notario Francisco González Nieto, el cual fue presentado en el Registro de la Propiedad. La cláusula de exclusividad incorporada en dicha escritura pública establece:

"Section Fourteen (14): Declaration of Restrictive Covenants and Constitution of Easements...

-(b) Landlord covenants that it shall not permit, and will cause not to be permitted, during the term of this lease, the operation of a supermarket, grocery or convenience store within (i) the adjacent shopping center 
*839
presently known as Plaza Las Américas (as such shopping center may be expanded in the future), and (ii) the Service Mall (other than the Demised premises)." 

En esa misma fecha, los contratantes otorgaron otra escritura mediante la cual constituyeron servidumbre en equidad -a favor de Pueblo-, sobre el predio conocido como "Service Mall", a los fines de que Plaza no pueda arrendar o permitir a otra entidad distinta a la recurrida, la operación de un "supermarket, grocery or convenience store" dentro de dicho solar. Dicha escritura también fue presentada en el Registro de la Propiedad. La cláusula pertinente establece:

"One. Constitution of Restrictive Covenants:

(a) The Landlord hereby constitutes the restrictive covenants described below ("servidumbres en equidad") on the Service Mall Property in favor and for the benefit of the Demised Premises, the Tenant and its successors and assigns:

From and after the date hereof until the expiration or earlier termination of the Lease pursuant to its terms, Landlord shall not lease, rent or permit to be occupied as a supermarket, grocery or convenience store, any premises in the Service Mall Property (other than the Demised Premises)."

El 26 de agosto de 1997, Fringe Area (II) S.E. y Kmart suscribieron contrato de arrendamiento ("Pad Lease") sobre otro predio del centro comercial. Surge de la sección 14.1 de dicho contrato y de los escritos de estipulaciones presentados por las partes ante el foro de instancia que la arrendadora (Plaza) dio conocimiento a Kmart de la existencia de la cláusula de exclusividad establecida a favor de Pueblo en el año 1989 y que Kmart se obligó a no operar o permitir la operación de ningún "supermarket, grocery or convenience store", durante la vigencia del contrato entre Plaza y Pueblo, en el predio que le sería arrendado.
En sus respectivos recursos, Plaza y Kmart plantean que el otorgamiento de la Escritura Núm. 4, mediante la cual se constituyó la servidumbre en equidad sobre el predio conocido como "Service Malí", limitó a dicho solar la aplicación de la cláusula de exclusividad pactada a favor de Pueblo, y que, por tanto, el contrato entre Pueblo y Plaza no fue violado, dado que Kmart no está ubicado en ese predio. Aducen que por ello procedía dictar sentencia sumaria desestimando el pleito de epígrafe.
Es menester, pues, analizar las disposiciones de las referidas escrituras públicas Núm. 3 y 4, a los fines de determinar si de dichos documentos surge la alegada modificación de la cláusula de exclusividad establecida a favor de Pueblo.
La controversia ante nos, se enmarca en la coexistencia de dos (2) derechos de naturaleza distinta: el derecho personal de obligación surgido en virtud de la cláusula de exclusividad incorporada en el contrato de arrendamiento suscrito entre Pueblo y Plaza; y el derecho real creado mediante el otorgamiento de la Escritura Núm. 4 en la que se constituyó servidumbre en equidad sobre el predio conocido como "Service Malí".
Como parte del contrato de arrendamiento otorgado por Plaza y Pueblo en el año 1989 (elevado a escritura pública en 1991), en el cual se estableció la citada cláusula de exclusividad, la demandada-peticionaria, Plaza, contrajo una obligación accesoria personal, de no hacer, a favor de Pueblo. Vélez Torres, citando a Diez Picazo, expresa sobre la obligación negativa de no hacer que ésta "puede ser una obligación autónoma o una obligación accesoria incorporada a una más amplia, como puede constituir una simple y pura inactividad, que consiste en abstenerse el deudor de realizar un acto o una serie de actos determinados, o puede consistir en que el deudor permita o tolere una actividad del acreedor". 
Este tipo de obligación consiste en omitir todo acto que perjudique el desenvolvimiento de la actividad del titular del derecho, y la correspondiente prestación consiste en un comportamiento negativo del deudor que puede caracterizarse como una omisión o una abstención. La obligación negativa obliga al deudor a abstenerse de *840 entregar o ejecutar lo que se le prohíbe. 
Como en toda obligación de naturaleza personal, en una obligación de no hacer, el acreedor solamente puede oponer su derecho contra el sujeto pasivo o deudor, no pudiendo obligar a un tercero, que no tomó parte en los hechos que originaron la obligación, a sujetarse a ella o a comportarse de conformidad con sus términos. 
De otra parte, el derecho real recae sobre una cosa o se ejerce con respecto a una cosa. Es absoluto en tanto y en cuanto es oponible a terceros. En otras palabras, persigue a la cosa sobre la cual recae, aunque ésta cambie de dueño.
En sus respectivos recursos, las peticionarias alegan que el hecho de haberse elevado a escritura pública el contrato de arrendamiento, en el cual se insertó la mencionada cláusula de exclusividad, tuvo el efecto de otorgar naturaleza real a ambos derechos (el de arrendamiento y el de exclusividad), por razón de ser el mismo inscribible en el Registro de la Propiedad. Alegan que el derecho de exclusividad -transformado en derecho real en virtud del antes mencionado acto, según su razonamiento-, fue modificado mediante el otorgamiento de la Escritura Núm. 4. No les asiste la razón.
Plaza, en virtud del contrato de arrendamiento suscrito con Pueblo, además de sujetarse a dicha obligación principal, se obligó a abstenerse de permitir -excepto a Pueblo-, la operación dé ningún supermercado, tienda de comestibles o de conveniencia dentro de los predios del centro comercial. Al ser ésta una obligación de naturaleza personal, su efecto es que Pueblo, como acreedor, solamente puede oponer su derecho contra Plaza, por ser ésta su deudor, no pudiendo obligar a un tercero, que no tomó parte en los hechos que originaron la obligación, a sujetarse a ella.
El Artículo 38 de la Ley Hipotecaria y del Registro de la Propiedad de 1979, dispone:

"En el Registro de la Propiedad se inscribirán los títulos, actos y contratos siguientes:

... 3ro. Arrendamiento de bienes inmuebles por un período de seis (6) años o más, o cuando hubiese convenio de las partes para que se inscriban...". 

El Tribunal Supremo ha expresado, en cuanto al particular, que un contrato de arrendamiento debidamente inscrito en el Registro de la Propiedad constituye un derecho real que surte efecto contra terceros. Garage Coop, de Sabana Grande v. Arco Caribbean, Inc., Ill D.P.R. 52 (1981).
Por tal razón, el derecho de arrendamiento a favor de Pueblo, por ser su término de vigencia mayor de seis (6) años, es inscribible, y de ser finalmente inscrito en el Registro de la Propiedad constituiría un derecho real. Sin embargo, el mero hecho de que en un título inscribible conste, además del derecho real de carácter principal constituido, una obligación personal accesoria que no goce de garantía real alguna, no otorga trascendencia real a esta última. Como regla general, los derechos de crédito que carecen de garantía real constituida para asegurar su cumplimiento, por razón de su naturaleza personal, no gozan de publicidad registral. 
Así las cosas, la obligación personal de Plaza de mantener la exclusividad de Pueblo en cuanto a sus operaciones dentro del centro comercial, no se transformó en un derecho de trascendencia real como alegan las peticionarias. El mencionado derecho de crédito no posee garantía real alguna que asegure su cumplimiento, ni existe ley o jurisprudencia alguna que intime que la elevación a escritura pública del contrato de arrendamiento inscribible, en el cual se insertó la mencionada cláusula de exclusividad, transformó dicha obligación personal en una de naturaleza real.
En cambio, al ser otorgada la Escritura Núm. 4 de constitución de servidumbre en equidad, sí se creó un derecho real oponible, por tanto, a terceros.
*841 Las servidumbres en equidad constituyen restricciones al uso de la propiedad, cuya validez y eficacia erga omnes requiere que dichas limitaciones sean lícitas y razonables, se establezcan como parte de un plan general de mejoras, consten de forma específica en el título y se inscriban en el Registro de la Propiedad. Cf. Carrillo Norat v. Camejo, 107 D.P.R. 132 (1978); Sands v. Extensión Sagrado Corazón, 103 D.P.R. 826 (1975); Asociación de Vecinos de Villa Caparra v. Iglesia Católica, 117 D.P.R. 346 (1986).
En la situación ante nos, el acto mediante el cual Plaza constituyó servidumbre en equidad sobre el predio de su propiedad conocido como "Service Mall", a favor de Pueblo, tuvo el resultado de hacer titular a este último de un derecho de trascendencia real.
A raíz de ello, los correspondientes derechos de uso, disfrute y disposición que posee Plaza como propietaria de dicho solar, y de todos los que le sucedan en su derecho de propiedad, quedaron limitados, no pudiendo éstos permitir durante la vigencia del contrato de arrendamiento entre Plaza y Pueblo, -excepto a Pueblo-, la operación de ningún supermercado, "grocery or convenience store" dentro del referido predio.
Entendemos que es inmeritorio el argumento de las peticionarias de que incidió el foro de instancia al no determinar que el hecho de haberse otorgado la escritura de constitución de servidumbre en equidad, tuvo el efecto de modificar la obligación que contrajo Plaza de mantener la exclusividad de Pueblo sobre todos los predios del centro comercial, y que, por ello, no hubo violación o interferencia alguna con el contrato suscrito entre Pueblo y Plaza, razón por la cual procedía dictar sentencia sumaria desestimando la demanda. Veamos porqué.
El Artículo 1158 del Código Civil dispone que para que una obligación quede extinguida por otra que la sustituya, es preciso que así se declare terminantemente, o que la antigua y la nueva sean de todo punto incompatibles. 31 L.P.R.A. § 3242. Dicho método de extinción de las obligaciones personales es conocido como "novación".
Es requisito insoslayable para que opere la novación, la voluntad novatoria manifiesta de las partes, esto es, la intención de extinguir la obligación sustituyéndola por una nueva. Warner Lambert Co. v. Tribunal Superior, 101 D.P.R. 378 (1973); Caribe Lumber Corp. v. Marrero, 78 D.P.R. 868 (1955). Por ende, la novación nunca se presume, sino que ha de ser acreditada sin género alguno de duda. Warner Lambert Co. v. Tribunal Superior, supra; Lamboglia v. Junta Escolar de Guayama, 13 D.P.R. 50 (1907).
La novación puede ser extintiva o modificativa, según sea su propósito el de extinguir la obligación original o solamente modificarla. De la jurisprudencia reseñada, surge que la novación, tanto en su modalidad extintiva como modificativa, es siempre una cuestión de intención y que ésta debe inferirse de las circunstancias que rodean cada caso en particular. La doctrina puntualiza el elemento de la voluntad de las partes como determinante de la novación.
Del lenguaje de la Escritura Núm. 4, mediante la cual se constituyó la servidumbre en equidad, surge claramente que dicha restricción al derecho de la propiedad de Plaza, se limitó únicamente al predio conocido como "Service Mall", y que, por tanto, no alcanza el predio ocupado por Kmart dentro del centro comercial.
No obstante, de dicho texto no se desprende que la creación del derecho real de servidumbre en equidad haya tenido el efecto de modificar o extinguir la obligación personal contraída por Plaza como parte del contrato suscrito con Pueblo, de reservar a éste la exclusividad en cuanto a las operaciones de un supermercado, "grocery or convenience store", dentro de los predios de todo el centro comercial.
No existe nada en los términos de la Escritura Núm. 4 que refleje la intención manifiesta de las partes de extinguir o modificar dicha obligación personal, limitando el alcance de la exclusividad de Pueblo al área conocida como "Service Malí".
*842 Fortalece más nuestra conclusión, el hecho de que tanto el acto de elevación a escritura pública del contrato de arrendamiento en el cual se incorpora la cláusula de exclusividad a favor de Pueblo sobre los predios de todo el centro comercial, como el otorgamiento de la escritura de constitución de servidumbre en equidad,se efectuaron el mismo día y ante el mismo Notario, sin que en ninguna de las escrituras se hiciera alusión alguna a la intención de modificar la obligación original mediante el otorgamiento de la segunda escritura. 
Entendemos que no puede deducirse la intención de las partes de limitar el área en la cual se mantendría la exclusividad de Pueblo de la redacción de la escritura de constitución de servidumbre en equidad, puesto que de la letra de esta última escritura no surge que ambos derechos resultaran incompatibles, de modo que sólo sobreviviera el derecho de Pueblo sobre el área del"Service Malí".
Más aún, no nos convence el argumento de las peticionarias de que el derecho de Pueblo no es extensivo al predio en el que ubica Kmart, dado el hecho incontrovertido de que en el contrato de arrendamiento entre ésta y Plaza se hizo constar expresamente el derecho de exclusividad del recurrido sobre la totalidad del centro comercial y Kmart se obligó allí a respetarlo. Nos parece frívola la excusa presentada por la peticionaria Plaza de que estipuló este hecho ignorando que había otorgado la Escritura Núm. 4 en virtud de la cual, alegadamente, modificó la obligación original.
Así, pues, según las escrituras, puede sostenerse que existe total compatibilidad entre ambos derechos: el derecho personal de Pueblo de exigirle a Plaza mantener la exclusividad de sus operaciones en los predios de todo el centro comercial y de cualquier futura expansión del mismo, y el derecho real de Pueblo, oponible a terceros, de que en el área específica del "Service Mall" no se pueda operar ningún supermercado, "grocery or convenience store". En los aludidos documentos, estos derechos coexisten y no son irreconciliables.
En conclusión, no se desprende de los documentos presentados ante el foro de instancia que hubiera novación modificativa de la obligación original asumida por Plaza. Ello quedaría sujeto a la prueba que desfile posteriormente.
No erró, pues, el tribunal a quo al determinar que no procedía dictar sentencia sumaria a favor de las peticionarias. No surge que procediera en derecho resolver a su favor la moción de sentencia sumaria instada.
III
Procede disponer entonces del asunto pertinente a las mociones denegadas por el foro de instancia mediante las cuales Kmart solicitó la exclusión de evidencia extrínseca sobre intención contractual a ser presentada por Pueblo durante la vista evidenciaría a señalarse en el caso de marras.
En la resolución recurrida, el Tribunal ordenó a Pueblo hacer una representación clara y específica, por escrito, sobre la prueba pertinente a la intención de las partes al momento de contratar, reservándose el derecho de limitar los testigos o de tomar cualquier otra determinación al respecto.
La peticionaria Kmart alega que debe eliminarse toda evidencia extrínseca relativa a la intención de las partes en los contratos de arrendamiento suscritos entre Pueblo y Plaza en 1965 y 1989, en los cuales se incorporó la citada cláusula de exclusividad, y en el contrato de arrendamiento otorgado entre Plaza y Kmart de 1997.
Aduce Kmart que es innecesaria la presentación de dicha prueba pues entiende que de los mencionados contratos surge claramente la intención de las partes, y que en la vista evidenciaría sólo debe desfilar prueba sobre el alcance de los conceptos "supermarket, grocery or convenience store" dentro de la industria de ventas y comestibles y de bienes raíces. Plaza también plantea lo mismo en su recurso.
Ambas peticionarias alegan que para la determinación en cuanto a si el contrato fue o no infringido, el desfile de prueba debe limitarse a la presentación de testimonio de peritos en cuanto a dichos términos técnicos y evidencia concerniente a sus defensas afirmativas. Asimismo, Kmart concluye que no es procedente el desfile de *843 prueba de intención contractual, pues alega que de sus hallazgos durante el proceso de descubrimiento de prueba, surge que dicha evidencia es inexistente.
Examinemos, pues, la normativa pertinente al asunto en cuestión.
El Artículo 1233 del Código Civil advierte:

"Si los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas.

Si las palabras parecieren contrarias a la intención evidente de los contratantes, prevalecerá ésta sobre aquéllas." 
Por su parte, el Artículo 1234 establece que para juzgar la intención de los contratantes, deberá atenderse, principalmente, a los actos de éstos, coetáneos y posteriores al contrato. 
De otro lado, la Regla 69 de las de Evidencia establece en lo pertinente:

"...(B) Cuando en un convenio oral o escrito, ya sea público o privado, se hayan incluido todos los términos y condiciones que constituyen la verdadera y última intención de las partes, se considerará que éste es uno integrado, por lo que no cabrá entre los convinientes o sus sucesores en interés, evidencia extrínseca al contenido del mismo, excepto en los siguientes casos:

(1) Cuando una equivocación o imperfección en el convenio sea alegada en el litigio;

(2) Cuando la validez del convenio constituye el hecho controvertido.

Esta regla no excluye otra evidencia de circunstancias bajo las cuales fuere hecho el convenio, o con las cuales se relacionare, como lo son la situación del objeto a que se contrayere o la de las partes, o para probar ilegalidad o fraude." 

No obstante lo dispuesto por dicha regla, el Tribunal Supremo ha sostenido que la interpretación de los contratos es área de derecho sustantivo que se rige por los artículos 1233 y 1234 y del Código Civil, y no por el derecho probatorio. Marina Industrial Inc. v. Brown Boveri Corp., 114 D.P.R. 64 (1983).
Es norma reiterada que en la interpretación de los contratos y demás actos jurídicos, cuando los términos no son claros, hay que indagar fundamentalmente la intención de las partes y el espíritu y finalidad que hayan presidido el negocio, infiriéndose de las circunstancias concurrentes y de la total conducta de los interesados. Cooperativa La Sagrada Familia v. Castillo, 107 D.P.R. 405 (1978).
Como expresamos al inicio de esta parte, las peticionarias basan su solicitud de exclusión de prueba de intención contractual en su alegación de que la intención de las partes surge claramente de las cláusulas de dichos contratos y que no existe controversia en cuanto a ésta. De los autos del caso, surge que carece totalmente de méritos dicha contención. Veamos.
Durante los procedimientos en instancia, el tribunal recurrido solicitó a las partes que estipularan su intención al suscribir los mencionados contratos, resultando infructuosa dicha gestión, dadas las discrepancias entre ellos en cuanto a su interpretación. 
Así las cosas, estando la reclamación que originó el trámite judicial del caso basada en un alegado incumplimiento de contrato e interferencia torticera en relaciones contractuales y en la cual existe discrepancia entre las partes en cuanto a la intención que tuvieron al otorgar los contratos pertinentes, entendemos que procede *844 la presentación de prueba de intención contractual. Así lo permiten las antes citadas disposiciones del Código Civil, que constituyen el derecho sustantivo aplicable en materia de interpretación de contratos.
Si bien es cierto que la prueba pericial relativa al significado de los términos "supermarket, grocery or convenience store", es pertinente y relevante para la resolución del caso de marras, es aún más importante descubrir la intención de las partes al otorgar los mencionados contratos, pues es ésta la que determina el verdadero alcance de las obligaciones asumidas en virtud de ellos. Cf García López v. Méndez García, 102 D.P.R. 383 (1974).
No erró el tribunal a quo al denegar la moción eliminatoria instada.
IV
Las peticionarias también recurren de la orden emitida por el Tribunal de Primera Instancia a los fines de prohibir que se tome deposición al Ledo. Donald Hull, uno de los socios del bufete que representa legalmente a Pueblo.
Es de aplicación a esta controversia, lo dispuesto por el Canon 22 de los de Etica Profesional y su jurisprudencia interpretativa.
El Canon 22 establece lo siguiente:

"Excepto cuando sea esencial para los fines de la justicia, el abogado debe de evitar testificar en beneficio o en apoyo de su cliente. Cuando un abogado es testigo de su cliente, excepto en materias meramente formales, tales como la comprobación o custodia de un documento y otros extremos semejantes, debe dejar la dirección del caso a otro abogado.

Igualmente, un abogado debe renunciar la representación de su cliente cuando se entera de que el propio abogado, un socio suyo o un abogado de su firma, puede ser llamado a declarar en contra de su cliente." 

El citado canon de ética desalienta la participación del abogado como elemento evidenciarlo en los pleitos. Es su propósito evitar mezclar la función del abogado con el papel de un testigo. 
De otra parte, es norma sostenida que el descubrimiento de prueba en casos civiles debe ser amplio y liberal. Rivera Alejandro v. Algorín, 112 D.P.R. 830 (1982). Sin embargo, éste admite justificadas excepciones. Dentro de este contexto, el Tribunal Supremo ha resuelto que no existe un derecho absoluto a llamar a deponer al abogado de la parte contraria en un litigio. Este derecho está condicionado a que previa y adecuadamente se establezca justa causa. Ades v. Zalman, 115 D.P.R. 514 (1984).
Al determinar si existe justa causa para permitir la toma de deposición al abogado de una parte, se le exige a los tribunales un estricto y ponderado escrutinio. El foro judicial debe tratar de detectar si la información que se busca descubrir a través del abogado, es susceptible de ser obtenida de otras personas o medios menos onerosos y complejos. De existir otras fuentes de información accesibles y aptas, debe prescindirse de ese curso de acción. 
En el caso de marras, Plaza solicitó deponer al Ledo. Donald Hull, quien es socio del bufete que representa legalmente a Pueblo. En esencia, el fundamento esbozado por Plaza para sustentar que existe justa causa para dicha solicitud, es que el Ledo. Hull participó activamente del proceso de negociación, perfeccionamiento y formalización del contrato de arrendamiento vigente entre Pueblo y Plaza, y que este abogado, a pesar de laborar en el bufete que representa a Pueblo, no está encargado del caso.
De la aplicación de la norma establecida en Ades v. Zalman, supra, se desprende que Plaza no ha demostrado que exista justa causa para acceder a su solicitud de tomar deposición al Ledo. Donald Hull.
*845 Coincidimos con el razonamiento del foro de instancia en cuanto a que la mera aseveración por parte de Plaza de que el testimonio del Ledo. Hull es pertinente a la cuestión en controversia, dado que este abogado tiene conocimiento de los hechos del caso, no cumple con la demostración de la justa causa exigida por la jurisprudencia para proceder a tomarle deposición.
De los autos del caso, surge que el Ledo. Donald Hull no es la única fuente accesible y apta para obtener información pertinente a las circunstancias bajo las cuales se suscribió el contrato de arrendamiento vigente entre Pueblo y Plaza.
En su recurso, esta última señala que no sólo el Ledo. Hull participó activamente de las negociaciones y formalización de dicho contrato, sino que, también, el Sr. Robert Locke colaboró de forma similar en dichos procesos. Más aún, Pueblo anunció al Sr. Locke como testigo para los procedimientos del caso.
Plaza señala que de sus hallazgos durante la etapa de descubrimiento de pmeba, se desprende que el Sr. Robert Locke nada puede aportar sobre las materias a ser objeto de la deposición que interesa tomar al Ledo. Hull y que por ello se justifica esta última. Dicho argumento no nos persuade.
Ante el hecho de que existen fuentes alternas de información en cuanto a la materia sobre la cual se interesa deponer al Ledo. Hull y no se demuestran circunstancias excepcionales que evidencien que los fines de la justicia hagan imperativa dicha deposición, es forzoso concluir que no erró el foro de instancia al prohibir la misma.
y
Nos resta examinar el asunto pertinente a la determinación tomada por el Tribunal de Primera Instancia de limitar a uno (1) el número de peritos a ser presentados por las partes durante los procedimientos del caso.
La Regla 52 de las Evidencia dispone:
"Cuando conocimiento científico, técnico o especializado, sea de ayuda para el juzgador entender la evidencia o determinar un hecho en controversia, un testigo capacitado como perito en relación con la materia sobre la cual va a declarar podrá testificar en forma de opiniones o de otra manera." 
Por su parte, la Regla 55 faculta al tribunal a limitar el número de peritos que podrán ser presentados por cualquiera de las partes, en cualquier momento anterior al comienzo del juicio o durante el mismo. Dicha Regla tiene el efecto de otorgar suficiente discreción a los foros judiciales, en aras de evitar dilaciones innecesarias en la tramitación de aquellas causas que requieran la utilización de prueba pericial.
Asimismo, la Regla 19 de las de Evidencia también confiere al juzgador la facultad discrecional de excluir evidencia pertinente cuando del balance de intereses resulte que su valor probatorio sea insignificante en relación a factores como la dilación excesiva de los procedimientos, y la innecesaria presentación de prueba acumulativa. 
Del mismo modo, la Regla 43 de Evidencia concede al juez que preside una vista amplia discreción y control sobre el modo de presentación de la evidencia y de interrogatorio a los testigos para así lograr que la prueba sea mostrada en la forma más efectiva posible para el esclarecimiento de la verdad, velando por la mayor rapidez de los procedimientos y evitando retrasos innecesarios. 
Del análisis de las precedentes reglas, se desprende que es al Tribunal a quien, en el ejercicio de su discreción, le compete permitir o no la presentación de evidencia de naturaleza pericial y limitar el número de peritos a presentarse a los fines de mantener el control de los procedimientos e impedir injustificadas demoras.
En el caso de marras, la peticionaria Kmart informó ál foro de instancia que se proponía utilizar prueba pericial a los fines de ilustrar al Tribunal sobre el alcance de los conceptos "supermarket, grocery or convenience *846 store" y "tienda de descuento por departamentos", dentro de la industria de alimentos, de las bienes raíces y el campo de las estrategias de mercado. A esos propósitos anunció como sus peritos a los señores Theodore Engel, Theodore H. Hellmuth y Robert W. Chapman. Adujo que la presentación de dichas opiniones periciales es necesaria para que prevalezca su teoría de que el establecimiento que ésta opera en los predios del centro comercial, no constituye un "supermarket, grocery or convenience store".
Por su parte, Plaza también informó su intención de utilizar prueba pericial durante los procedimientos a los fines de demostrar que el área del "Pantry" operada por Kmart dentro del centro comercial, no es un supermercado, tienda de comestibles o de conveniencia. Esta anunció como sus peritos a la Sra. Georgette C. Pointdexter, al Sr. Kevin D. Cray, y al Sr. Kevin Coupe.
Así las cosas, el tribunal a quo, mediante la resolución recurrida, declaró ha lugar una moción presentada por Pueblo en fecha 23 de septiembre de 1999, en la que solicitó se limitara a uno (1) el número de peritos a ser presentado por cada litigante. Pueblo fundamentó su solicitud alegando que el número de peritos anunciados por las peticionarias era excesivo y oneroso y que era impermisible la admisión de algunos de sus testimonios, pues varios de estos peritos "pretenden testificar sobre cuestiones de derecho que son de la exclusiva providencia del Tribunal." 
En su recurso, Plaza admite que las opiniones de los tres (3) peritos propuestos por ella llegan a un mismo resultado. De igual forma, del análisis de la petición de certiorari sometida por Kmart, surge que el testimonio de sus tres (3) peritos es uno tendiente al mismo fin: sostener su teoría de que Kmart no está operando como un supermercado, tienda de comestibles o de conveniencia.
A tenor con la normativa expuesta al inicio de esta sección, resolvemos que el foro de instancia tenía plena facultad para tomar la determinación de limitar a uno (1) el número de peritos a ser presentados por los litigantes en el caso de autos.
Estamos convencidos de que el Tribunal de Primera Instancia no abusó de su discreción al tomar dicho curso de acción. Permitir el testimonio de cuatro (4) peritos que han de presentar evidencia adicional del mismo carácter tendiente al mismo fin, constituye prueba acumulativa que no se debe permitir en este caso. Véase Pueblo v. Acabá Raíces, 118 D.P.R. 369 (1987).
De hacerlo así, tendría el efecto de dilatar innecesariamente la solución justa, rápida y económica del caso como así lo exige la Regla 1 de Procedimiento Civil. 31 L.P.R.A. Ap. Ill, R. 1.
Más aún, cabe destacar que el foro de instancia, en etapas tempranas de los procedimientos, antes de dictar la resolución recurrida, había dispuesto que cada litigante podría utilizar un sólo perito, y más tarde reafirmó dicho dictamen, luego de ser solicitada una reconsideración por la peticionaria Kmart. Denegada dicha solicitud de reconsideración, las peticionarias volvieron a solicitar otra, en virtud de lo cual el foro de instancia reiteró su dictamen mediante la resolución recurrida. Nada nos mueve a alterar la misma.
Por los fundamentos antes expuestos, se deniegan los recursos instados.
El Juez José M. Aponte Jiménez concurre con el resultado con voto escrito.
Lo pronunció el Tribunal y lo certifica la Subsecretaría General.
Gladys E. Ortega Ramírez
Subsecretaría General
*847 ESCOLIOS 2001DTA 52
1. Segunda Demanda Enmendada, Apéndice del Recurso de Plaza, a la pág. 49.
2. Moción de Sentencia Sumaria instada por Plaza y Kmart; Moción solicitando orden limitando el número de peritos; Mociones "In Limine"-, Entrega de los contratos de Plaza con otros inquilinos, solicitud de entrega de planos sobre las medidas del área del Pantry y solicitud de sanciones, todas instadas por Pueblo; Solicitud de reconsideración de la orden denegando toma de deposición al Ledo. Donald Hull; y toma de deposición a los licenciados Jaime Fonalledas y Roberto Trápaga.
3. 32 L.P.R.A. Ap. Ill, R. 36.2.
4. Las demandadas-peticionarias, Fringe Area, S.E., Fringe Area (II), S.E., son sociedades especiales sucesoras de las arrendadoras originales, Fringe Area, Fringe Area (PLA), Inc., y Fringe Area (PLA) II, Inc.
5. "Deed, of Ratification and Conversion of Lease to Public Instrument", Escritura Número 3 de 15 de febrero de 1991. Apéndice del recurso instado por Plaza, págs. 89-159.
6. Id., a la pág. 128.
7. Escritura Número Cuatro de 15 de febrero de 1991, Apéndice del recurso instado por Plaza, págs. 961-970.
8. Apéndice del recurso instado por Plaza, a la pág. 177.
9. Vélez Torres, José R., Curso de Derecho Civil: Derecho de Sucesiones, 2da ed., San Juan, 1997, pág. 115.
10. Idem.
11. Idem.
12. Ibid, a la pág. 16.
13. Ibid, a la pág. 17.
14. 30 L.P.R.A. 2201.
15. Véase Artículo 41 y 101 de la Ley Hipotecaria, 30 L.P.R.A. §2204,2351.
16. Escritura Número Tres y Número Cuatro de 15 de febrero de 1991, respectivamente, otorgadas ante el Notario Francisco González Nieto.
17. 31 L.P.R.A. §3471.
18. 31 L.P.R.A. §3472.
19. 32 L.P.R.A. Ap. IV, R. 69.
20. Véase el escrito de estipulaciones suscrito por las partes de epígrafe, del cual no se desprende consenso alguno entre éstas en cuanto a la intención de los referidos contratos.
21.4 L.P.R.A., Ap. IX, C. 22.
22. Ades v. Zalman, 115 D.P.R. 514 (1984).
23. Ades v. Zalman, 115 D.P.R. 514 (1984).
*848 24. 32 L.P.R.A. Ap. IV, R. 52.
25. 32 L.P.R.A. Ap. IV, R. 55.
26. 32 L.P.R.A. Ap. IV, R. 19.
27. 32 L.P.R.A., Ap. IV, R. 43.
28. Apéndice del recurso instado por Plaza, a la pág. 466.
29. Petición de Certiorari presentada por Plaza, a la pág. 32.