Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| [VUR-JER], LLC<br><br>Demandante-Peticionario<br><br>v.<br><br>GWEN G. BLACK<br><br>Demandado-Recurrido<br><br>v.<br><br>JOSÉ J. BERRÍOS y otros<br><br>Terceros Demandados | KLAN202500339 | APELACIÓN, **acogido como** *Certiorari*, Procedente del Tribunal de Primera Instancia, Sala de Arecibo<br><br>Caso Núm.: MT2019CV00548<br><br>Sobre: *Injuction* Preliminar y otros |

Panel integrado por su presidenta, la juez Brignoni Mártir, la jueza Álvarez Esnard y la jueza Prats Palerm.

Álvarez Esnard, jueza ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 16 de junio de 2025.

Comparecen José Berríos Rivera ("señor Berrios Rivera") y Ángel Álvarez Freiria ("señor Álvarez Freiría") (en conjunto, "los Peticionarios"), y solicitan la revocación de la *Resolución* emitida y notificada el 15 de abril de 2024, por el Tribunal de Primera Instancia, Sala de Arecibo, (foro *a quo* o foro primario). Mediante la referida *Resolución* el foro primario, a solicitud de Gwen G. Black ("señora Black" o "Recurrida"), descalificó a los abogados de los Peticionarios, al amparo de la Regla 9.3 de Procedimiento Civil, 32 LPRA Ap. R.9.3.

Por los fundamentos que expondremos a continuación **denegamos** de recurso de epígrafe.

### I.

[VUR-JER] LLC es una compañía de responsabilidad limitada organizada y existente en el Estado Libre Asociado de Puerto Rico,

Número Identificador

SEN(RES)2025_____

poseedora de una licencia de dispensario de cannabis medicinal, y dueña y administradora de un dispensario. El 25 de junio de 2019, [VUR-JER] LLC presentó *Solicitud de Injunction Preliminar y Permanente y Demanda* ante el foro primario, en contra de la señora Black, quien ocupó el puesto de Gerente del dispensario de [VUR-JER] LLC, además de ser socia minoritaria de la empresa.[1] En síntesis, [VUR-JER] LLC alegó que la Recurrida, antes de terminar su incumbencia, tomó posesión de propiedad, expedientes, récords de ventas y contraseñas de la empresa, lo cual ocasionó daños a [VUR-JER] LLC, por lo que solicitó la disolución de su participación como socia minoritaria, toda vez que pone en riesgo la licencia y la subsistencia de [VUR-JER] LLC. Sobre esos extremos, [VUR-JER] LLC solicitó al TPI que valorizara la participación de la señora Black y que liquidara y disolviera su participación.

En respuesta, el 2 de diciembre de 2019, la señora Black presentó *Contestación a Demanda Enmendada, Reconvención y Demanda contra Terceros.*[2] En esencia, la Recurrida sostuvo que es miembro fundador de [VUR-JER] LLC con un 20% de la unidades Clase A, que la reclamación no expone hechos que justifiquen la concesión de un remedio; que el daño fue autoinfligido y que de haber irregularidades estas se debieron a las acciones de los miembros mayoritarios, los aquí Peticionarios, por lo que reconvino en contra de estos.

Por su parte, el 28 de enero de 2020, los Peticionarios presentaron ante el TPI *Contestación a Demanda Contra Tercero y Reconvención Enmendadas* en la que alegaron que la señora Black incumplió las obligaciones contraídas para la administración de [VUR-JER] LLC; que se apropió de sustancias controladas y que falsificó documentos de la empresa, lo que provocó que el

---

[1] *Véase*, Apéndice de la *Oposición a Expedición a Recurso Certiorari*, págs. 1-8.
[2] *Íd.*, págs. 9-19.

Departamento de Salud multara a [VUR-JER] LLC. [3] Para esa fecha, los Peticionarios tenían como representante legal al Lcdo. German J. Brau, de la firma Bauzá Brau Hernández.

El 22 de febrero de 2023, los Peticionarios comparecieron ante el foro primario mediante *Moción Asumiendo Representación Legal.* [4] Allí informaron que la firma ML Law Group y sus abogados, la Lcda. Gabriela N. Cruz Rodríguez y el Lcdo. Daniel Martínez Avilés, asumirían su representación legal como Terceros Demandados, por lo que solicitaron al TPI que aceptara dicha representación y que los incluyera como sus abogados de récord. En igual fecha, [VUR-JER] LLC compareció ante el TPI mediante *Moción Asumiendo Representación Legal,* suscrita por la Lcda. Lorena Soler Centeno, (licenciada Soler Centeno), en la que esta informó que es parte de la firma ML Law Group y solicitó al foro primario que la aceptara como representación legal de [VUR-JER] LLC, y que la incluyera como abogada de récord de dicha parte.[5]

Posteriormente, mediante comunicación de **31 de julio de 2023,** cursada por ML Law Group, en representación de [VUR-JER], LLC y dirigida a la señora Black, aquí Recurrida, el Lcdo. Daniel Martínez Avilés le notificó que los aquí Peticionarios, el señor Álvarez Freiria y el señor José Berríos Rivera, se encontraban tramitando la renovación de licencia del Dispensario VUR JER ante la Junta Reglamentadora del Cannabis Medicinal.[6]

El 18 de agosto de 2023, el Lcdo. German J. Brau presentó *Moción Sobre Renuncia de Representación Legal,* la cual fue aceptada por el foro primario el 21 de agosto de ese año.[7]

---

[3] *Íd.*, págs. 20-30.
[4] *Íd.*, págs. 31-32.
[5] *Íd.*, págs. 33-34.
[6] *Véase,* Apéndice del *Certiorari*, pág. 13.
[7] *Véase,* Apéndice de la *Oposición a Expedición de Certiorari,* pág. 36. Véase, además, Entradas Núm. 229 y 232 de SUMAC.

Así las cosas, el 21 de agosto de 2023, la señora Black, aquí presentó ante el foro primario escrito intitulado *Solicitud Urgente de Descalificación de Lcdos. German Brau, Luis Colón Conde, Daniel Martínez, Lorena Soler y Gabriela Cruz Rodríguez y Moción Informativa de Reserva de Derechos.*[8] En lo pertinente, la Recurrida-parte demandada reconveniente ante el foro primario- alegó en la solicitud de descalificación que la Lcda. Gabriela N. Cruz Rodríguez y el Lcdo. Daniel Martínez Avilés, quienes trabajan en la firma ML Law Group, representaban a los Terceros Demandados, José Berríos Rivera y Ángel Álvarez Freiría- aquí Peticionarios- y que la Lcda. Lorena Soler Centeno quien también trabaja para la firma ML Law Group, representaba a la parte demandante-reconvenida, [VUR JER] LLC, por lo que la misma firma legal corepresenta tanto a la parte demandante como a los terceros demandados reconvenidos, aquí Peticionarios, sin que existiera en dicha firma la figura de la muralla china. En esencia, la señora Black - aquí Recurrida- esbozó en su solicitud de descalificación que los miembros mayoritarios de [VUR JER] LLC son los terceros demandados y reconvenidos, -aquí Peticionarios- José Berríos Rivera y Ángel Álvarez Freiría, y que precisamente la controversia del pleito es el estatus o valoración del negocio de cannabis medicinal, y la compensación a la señora Black en su participación de 20% en [VUR-JER] LLC, previo a su remoción como socia.

En esa fecha, 21 de agosto de 2023, el Lcdo. Germán Brau, compareció ante el TPI en representación de los Peticionarios mediante *Moción Sobre Solicitud de Descalificación y otros Particulares.*[9] Allí expuso que la solicitud de descalificación de la Recurrida está predicada en que ML Law Group, que también representa a los Peticionarios, terceros demandados ante el foro *a*

---

[8] *Véase,* Apéndice del *Certiorari*, pág. 1-9.
[9] *Íd.*, págs. 19-22.

*quo*, esta igualmente representando a [VUR-JER] LLC., en un procedimiento administrativo. En esencia, el Lcdo. Germán Brau sostuvo que no existe conflicto alguno en ello, porque el interés de [VUR-JER] LLC, y la de los accionistas mayoritarios, aquí Peticionarios- no es conflictivo. Además, arguyó que, en su caso particular, la solicitud de desestimación es académica, toda vez que fue relevado de la representación legal de los Peticionarios por el foro primario. En lo pertinente, el Lcdo. Germán Brau, aclaró, además, que del tracto procesal del caso se desprende que el Lcdo. Radamés Marín Montalvo, representante legal de la Recurrida, le indicó al foro primario que no había acuerdo para deponer a la señora Black en Puerto Rico, cuando lo cierto es que todos los abogados del caso entendían que esta comparecería de manera presencial.

Posteriormente, el 23 de agosto de 2023, el licenciado Martínez Avilés, en representación de los Peticionarios y la licenciada Soler Centeno, en representación de [VUR-JER] LLC, presentaron ante el foro primario *Moción en Oposición a Solicitud Urgente de Descalificación.*[10] **En esencia, sostienen que la solicitud de descalificación es otra práctica dilatoria del representante legal de la señora Black en el presente caso. Asimismo, arguyen que hay ausencia de conflicto en la notificación de 31 de julio de 2023, cursada a la señora Black sobre los requerimientos de la Junta Reglamentadora del Cannabis Medicinal a [VUR-JER] LLC, en el proceso administrativo sobre renovación de licencia, que es parte de los deberes fiduciarios de los miembros de la compañía.**

En respuesta, el 24 de agosto de 2023, la señora Black presentó Breve *Moción en Respuesta a Moción de los Lcdos. Martínez*

---

[10] *Íd.*, págs. 27-31. Véase, Entrada Núm. 228 de SUMAC.

*y Soler del Bufete ML Law* en la que reitera sus argumentos sobre la descalificación.[11]

Tras varios incidentes procesales, el 15 de septiembre de 2023, foro primario celebró vista argumentativa sobre el asunto de la solicitud de descalificación presentada por la señora Black. En dicha vista argumentativa, los abogados de las partes comparecientes argumentaron ampliamente en torno a la solicitud de descalificación presentada por la señora Black y al finalizar el foro primario dejó sometida la moción de descalificación.[12]

Así las cosas, mediante *Resolución* emitida y notificada el 15 de abril de 2024, el foro *a quo* declaró Ha Lugar la *Solicitud Urgente de Descalificación*, presentada por la Recurrida, y determinó descalificar al licenciado Daniel Martínez Avilés, a la licenciada Gabriela Cruz Rodríguez, así como a la firma ML Law Group a al cual estos pertenecen, quienes figuraban como abogados de los Peticionarios. Asimismo, ordenó a estos anunciar una nueva representación legal en el término de treinta (30) días. Al descalificar a los abogados de los Peticionarios, al amparo de la Regla 9.3 de Procedimiento Civil, 32 LPRA Ap. R.9.3, el foro primario fundamentó su determinación en la aparente violación de los abogados de la firma ML Law Group al Canon 38 del Código de Ética Profesional, al comunicarse directamente con la Recurrida el 31 de julio de 2023, mediante carta cursada a la señora Black referente a los requerimientos de la Junta Reglamentadora del Cannabis Medicinal para la renovación de la licencia de cannabis, en lugar de enviar dicha comunicación directamente a su abogado, el Lcdo.. Radamés C. Marín Montalvo, quien figuraba como abogado de récord de la señora Black.

---

[11] *Íd.*, págs. 32-34.
[12] *Íd.*, pág. 71.

En desacuerdo, el 30 de abril de 2024, los Peticionarios presentaron *Solicitud de Reconsideración*.[13] En esencia, señalan que que es inaplicable la doctrina de descalificación a los fines de descalificar a todo un bufete, ya que hay ausencia de conflicto de intereses adversos de las dos partes representadas por el abogado o bufete. Razonan los Peticionarios que para que aplique la doctrina de descalificación imputada debe darse el asunto de representación adversa o sucesiva adversa, lo cual no es el caso. Arguyen además, que **la carta de 31 de julio de 2023**, **es únicamente un aviso de la continuación de los trámites de licencia ante un organismo administrativo, por lo que tampoco se configura** una **ventaja indebida sobre la parte contraria**, **prohibición establecida en el Canon 38**, toda vez que la Recurrida no es parte contraria, ni parte en el procedimiento administrativo ante la Junta Reglamentadora del Cannabis Medicinal.

En respuesta, el 13 de mayo de 2024, la señora Black presentó ante el foro primario *Moción en Oposición a que se Reconsidere Resolución de Descalificación del 15 de abril de 2024*.[14] En síntesis, **la Recurrida esbozó** que los hechos imputados por alegada violación **al Canon 21, 22, y 38 no requerían vista evidenciaría toda vez que son hechos procesales los cuales quedaron establecidos y que la referida carta de 31 de julio de 2023 la anejaron al expediente judicial**.

Mediante *Resolución Interlocutoria* de 19 de marzo de 2025, el foro primario declaró *No Ha Lugar* a la *Solicitud de Reconsideración* presentada por los Peticionarios.[15]

---

[13] *Íd.*, págs. 85-111.
[14] *Íd.*, págs. 139-148.
[15] *Íd.*, pág. 149.

Inconformes, los Peticionarios recurren ante nos mediante el recurso de epígrafe y señalan la comisión de los siguientes errores por parte del foro primario:

> Erró el Tribunal de Primera Instancia en la interpretación y aplicación de los Cánones de Ética 22 y 28, fundamentales para la conducta Ética de los abogados en el ejercicio profesional. En particular, la descalificación de los licenciados Martínez Avilés y la firma ML Law Group se basó en una aplicación incorrecta de estos cánones.

> Erró el Tribunal de Primera Instancia en plasmar o evaluar adecuadamente la naturaleza y la magnitud de los hechos que sustentaban la solicitud de reconsideración, lo que resultó en una decisión que no reflejaba una valoración objetiva de las pruebas presentadas en su momento.

> Erró el Tribunal de Primera Instancia en la aplicación del principio de proporcionalidad: este principio exige que las medidas adoptadas por el Tribunal sean adecuadas, necesarias y proporcionales al daño que se pretende evitar.

> Erró el Tribunal de Primera Instancia al emitir una sentencia que no contenía una determinación adecuada y carecía de un análisis sustantivo de la prueba presentada, lo cual constituye una violación al debido proceso al no cumplir con los requisitos mínimos reglamentarios sobre la evaluación evidenciaria.

Mediante escrito intitulado *Moción Informando Necesidad de Reproducción de Prueba Oral al Amparo del Reglamento del tribunal de Apelaciones y en Autorización de Alegato Suplementario,* presentado el 21 de abril de 2023, los Peticionarios nos solicitan que ordenemos la reproducción de la prueba oral de la Vista argumentativa celebrada el 14 y 15 de abril de 2023 ante el foro primario.

Por su parte, el 28 de abril de 2025, compareció ante nos la señora Black mediante *Oposición a Expedición a Recurso de Certiorari Bajo Regla 37 del Reglamento del Tribunal de Apelaciones.* En síntesis, la Recurrida sostiene que no incidió el foro primario al ordenar la descalificación de los representantes legales de los Peticionarios. Expone que al asumir la representación legal de los Peticionarios, quienes son terceros demandados y reconvenidos ante el foro primario, el licenciado Martínez Avilés y demás abogados de

la firma ML Law Group aceptaron representar a la misma vez a dos clientes con posturas encontradas. Razona la Recurrida que la firma ML Law Group y sus abogados intervienen en hechos que afectan tanto a la empresa demandante, [VUR JER] LLC, como a la Recurrida, quien figura como parte demandada reconveniente ante el TPI, así como a los Peticionarios, terceros demandados reconvenidos ante el foro primario. Puntualiza la Recurrida que ello se desprende, entre otros documentos, de la comunicación de 31 de julio de 2023 que le fue enviada por el licenciado Martínez Avilés a ella directamente y no a través de su abogado. Destaca igualmente la Recurrida como hecho relevante y pertinente a la controversia sobre descalificación, que la señora Black es aún socia minoritaria de [VUR JER] LLC, a quien dicha firma legal también representa.

Asimismo, en igual fecha la Recurrida presentó ante nos *Oposición a que se Ordene Regrabación/Transcripción.* Razona la señora Black que en el caso de epígrafe no se celebró vista evidenciaria sino argumentativa, por lo que no hubo desfile de prueba oral que deba ser objeto de transcripción o regrabación.

## II.

### *A. Certiorari*

"[U]na resolución u orden interlocutoria, distinto a una sentencia, es revisable mediante *certiorari* ante el Tribunal de Apelaciones". *JMG Investment v. ELA et al.,* 203 DPR 708, 718 (2019). "El recurso de *certiorari* es un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior". *Rivera et al. v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023). Véase, además, *Torres González v. Zaragoza Meléndez,* 211 DPR 821 (2023).

No obstante, la discreción del tribunal apelativo en este aspecto no opera en un vacío ni en ausencia de parámetros. *BPPR v. SLG Gómez-López,* 213 DPR 314, 337 (2023). La Regla 40 del

Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, señala los criterios que se deben tomar en consideración al evaluar si procede expedir un auto de *certiorari*. *Íd.* Estos criterios son:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

El Tribunal Supremo ha expresado que la discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *Mun. de Caguas v. JRO Construction, supra*, págs. 712-713.

### B. *La Descalificación de Abogados*

La Regla 9.3 de las de Procedimiento Civil establece que un tribunal, en el ejercicio de su poder inherente de supervisar la conducta de los abogados que postulan ante sí, puede descalificar a un abogado que incurra en conducta que constituya un obstáculo para la sana administración de la justicia o que infrinja sus deberes hacia el tribunal, sus representados o compañeros abogados. 32 LPRA Ap. V, R. 9.3. Así, el Tribunal de Primera Instancia puede ordenar la descalificación de un representante legal cuando ello abone a la adecuada marcha de un litigio y sea necesario para la solución justa, rápida y económica de los pleitos. *Meléndez v. Caribbean Int'l. News*, 151 DPR 649, 661 (2000). Como es sabido, "los procedimientos de descalificación de abogados no constituyen de por sí acciones disciplinarias sujetas a la jurisdicción exclusiva

del Tribunal Supremo". *K-Mart Corp v. Walgreens de PR, Inc.,* 121 DPR 633, 637-638 (1988); *Liquilux Gas v. Berrios,* 138 DPR 850, 864 (1995). La descalificación "es una medida preventiva para evitar posibles infracciones a los Cánones de Ética Profesional … [y] funge como un 'mecanismo para asegurar la adecuada marcha de un litigio evitando los actos disruptivos provenientes del abogado'". *ORIL v. El Farmer, Inc.,* 204 DPR 229, 241 (2020) (*citando a* R. Hernández Colón, *Práctica Jurídica de Puerto Rico: derecho procesal civil,* 6ta ed., San Juan, Ed. Lexis Nexis, 2017, pág. 82); *K-Mart Corp v. Walgreens de PR, Inc., supra*, pág. 637. Particularmente, "la descalificación puede otorgarse con el fin de: (1) prevenir una violación a cualquiera de los Cánones del Código de Ética Profesional o (2) evitar actos disruptivos de los abogados durante el trámite de un pleito". *ORIL v. El Farmer, Inc., supra*, pág. 241.

Al evaluar lo sustantivo de la procedencia de una descalificación los tribunales deben hacer un análisis de la totalidad de las circunstancias 'para valorar si la actuación del abogado constituye un 'acto disruptivo' o si tiene el potencial de desembocar en una violación de los Cánones del Código de Ética Profesional'". *ORIL v. El Farmer, Inc., supra*, pág. 242; *Meléndez Vega v. Caribbean Intern News, supra*, pág. 662. Para ello, se establecen los siguientes factores: (1) si quien solicita la descalificación tiene legitimación activa para invocarla; (2) la gravedad de la posible violación ética involucrada; (3) la complejidad del derecho o los hechos pertinentes a la controversia y el *expertise* de los abogados implicados; (4) la etapa de los procedimientos en que surja la controversia sobre descalificación y su posible efecto en cuanto a la solución justa, rápida y económica del caso, y (5) el propósito detrás de la descalificación es decir, si la moción se está utilizando como mecanismo para dilatar los

procedimientos. *ORIL v. El Farmer, Inc., supra,* págs. 242-234; *véase, además, Job Connection Center v. Sups. Econo, supra,* pág. 597-598 (2012); *Liquilux Gas v. Berrios, supra,* págs. 864-866.

De igual forma, el juez que atiende una moción de descalificación presentada por la parte adversa deberá analizar si la continuación de la representación legal le causará perjuicio o desventaja indebida a quien la solicita. *Job Connection Center v. Sups. Econo, supra,* pág. 598. De igual forma, es menester que se sopese, además, el derecho que le asiste a todo ciudadano de escoger con libertad el abogado que lo represente. *ORIL v. El Farmer, Inc., supra,* pág. 242.

Para ello, es preciso asegurarse de que **"el abogado a ser descalificado tenga al menos la oportunidad de ser oído, pudiendo presentar prueba en su defensa"**. *Otaño v. Vélez,* 141 DPR 820, 828 (1996) (*Per Curiam*) (Énfasis suplido). Ello está cimentado en que el remedio de la descalificación no debe imponerse ligeramente y su evaluación debe estar guiada por un análisis sosegado de todas las circunstancias que rodean la controversia. *Job Connection Center v. Sups. Econo, supra,* pág. 597. Es decir, solo debe proceder cuando sea estrictamente necesario, por considerarse un remedio drástico que debe ser evitado si existen medidas menos onerosas que aseguren la integridad del proceso judicial y trato justo a las partes. *Íd.*

### C. *Los Cánones de Ética Profesional y la Descalificación*

El Código de Ética Profesional establece las pautas mínimas que deben guiar a los abogados en el desempeño de su profesión y regulando en sí las interacciones de los abogados con los demás miembros de la sociedad. 4 LPRA Ap. IX; *In re Nogueras Cartagena,* 150 DPR 667, 674 (2000).

El Canon 21 del Código de Ética Profesional dispone expresamente siguiente:

> El abogado tiene para con su cliente un deber de lealtad completa. Este deber incluye la obligación de divulgar al cliente todas las circunstancias de sus relaciones con las partes y con terceras personas, y cualquier interés en la controversia que pudiera influir en el cliente al seleccionar su consejero. Ningún abogado debe aceptar una representación legal cuando su juicio profesional pueda ser afectado por sus intereses personales.
>
> No es propio de un profesional el representar intereses encontrados. Dentro del significado de esta regla, un abogado representa intereses encontrados cuando, en beneficio de un cliente, es su deber abogar por aquello a que debe oponerse en cumplimiento de sus obligaciones para con otro cliente.
>
> La obligación de representar al cliente con fidelidad incluye la de no divulgar sus secretos o confidencias y la de adoptar medidas adecuadas para evitar su divulgación. Un abogado no debe aceptar la representación de un cliente en asuntos que puedan afectar adversamente cualquier interés de otro cliente anterior ni servir como árbitro, especialmente cuando el cliente anterior le ha hecho confidencias que puedan afectar a uno u otro cliente, aun cuando ambos clientes así lo aprueben. Será altamente impropio de un abogado el utilizar las confidencias o secretos de un cliente en perjuicio de éste.
> 4 LPRA Ap. IX, C. 21.

En lo pertinente, el Tribunal Supremo ha determinado que el conflicto de intereses al que alude el Canon 21 presenta tres situaciones que deben ser evitadas por todo abogado: (1) que, en beneficio de un cliente, abogue por aquello a lo que el letrado debe oponerse en cumplimiento de sus obligaciones para con otro cliente; (2) que un abogado acepte la representación legal de un cliente en asuntos que puedan afectar adversamente cualquier interés de un cliente anterior, y (3) que un abogado acepte una representación legal, o que continúe en ella, cuando su juicio profesional pueda ser afectado por sus intereses personales. *In re Santiago Ríos*, 172 DPR 802, 813-814 (2007). Lo anterior, para "evitar una conducta profesional que mine el principio cardinal de confianza en que debe fundamentarse toda relación fiduciaria entre un abogado y su cliente". *Íd.*, pág. 814.

Como es sabido, "[l]a relación abogado-cliente es de naturaleza fiduciaria y está fundada en la honradez absoluta. Asimismo, se funda en el deber de lealtad y de confidencialidad de todo abogado para con su cliente". *Íd.* A su vez, "[e]l abogado tiene la obligación de representar a su cliente con total lealtad, ejercer un criterio profesional independiente y desligado de sus propios intereses, no divulgar los secretos y las confidencias que el cliente haya compartido durante el transcurso de sus representaciones pasadas y presentes". *In re Santiago Ríos, supra,* pág. 815. Por lo que, "los abogados no solo deben evitar el conflicto de intereses actual, sino también el potencial. Basta con que el conflicto sea potencial para imponer al abogado la obligación de renunciar a la representación del cliente afectado". *Íd.*

Sobre estos extremos, es doctrina reiterada que, "el conflicto de intereses proscrito por el Canon 21 comprende tanto el conflicto de intereses personales como el conflicto de obligaciones". *In re Santiago Ríos, supra,* pág. 815. Es decir que, "[l]a primera vertiente sostiene que el conflicto existe cuando los intereses personales del abogado interfieren con la representación adecuada y efectiva del cliente, al ser éstos incompatibles, dificultando de este modo el deber de lealtad hacia su cliente". *Íd.* Mientras que, en la segunda acepción, "el conflicto de obligaciones existe cuando las representaciones simultáneas o sucesivas están en conflicto con su deber de guardar confidencias que ostenta el abogado con cada uno de sus clientes". *Íd.*

De igual forma el Tribunal Supremo ha reiterado que "[e]s deber de todo abogado cerciorarse de que no represente intereses encontrados o incompatibles entre sí. Además, el abogado tiene que cuidarse de que sus actuaciones no den margen a la más leve sospecha de que promueve o defiende intereses encontrados con los de su cliente". *Íd.,* págs. 815-816. Por ello, "[e]n caso de que surja

alguna sospecha, es deber del abogado desligarse de la representación profesional que ostenta". *Íd.*, pág. 816. Ahora bien, precisa destacar que **no existe una norma absoluta en el Canon 21 que proscriba la representación legal sucesiva o simultánea de dos clientes ante la total ausencia de posible conflicto de intereses para ambas representaciones**. *Otaño v. Vélez, supra*, pág. 827.

El Canon 22 del Código de Ética Profesional (en adelante "Canon 22") rige las normas básicas en torno a los abogados sirviendo como testigo de un pleito, disponiendo lo siguiente:

> Excepto cuando sea esencial para los fines de la justicia, **el abogado debe evitar testificar en beneficio o en apoyo de su cliente**. **Cuando un abogado es testigo de su cliente**, excepto en materias meramente formales, tales como la comprobación o custodia de un documento y otros extremos semejantes, **debe dejar la dirección del caso a otro abogado**.

> Igualmente, **un abogado debe renunciar la representación de su cliente cuando se entera de que el propio abogado**, un socio suyo o un abogado de su firma **puede ser llamado a declarar en contra de su cliente.** (Énfasis nuestro) 4 LPRA Ap. IX C. 22.

De lo anterior se desprende que el Canon 22 reconoce que el abogado no debe ser parte ni incorporado al elemento probatorio y busca evitar en lo posible mezclar la función del abogado con el papel de un testigo. *Ades v. Zalman*, 115 DPR 514, 520 (1984).

Como elemento determinante al evaluar la descalificación, el foro judicial debe tratar de detectar si la información que se busca descubrir a través del abogado es susceptible de ser obtenida de otras personas o por medios menos onerosos y complejos. *Ades v. Zalman, supra*, pág. 524. De existir otras fuentes de información accesibles y aptas, el tribunal debe optar por ese curso de acción. *Íd.*

Finalmente, el Canon 38 del Código de Ética Profesional dispone, expresamente, que el abogado debe evitar hasta la apariencia de conducta profesional impropia. 4 LPRA Ap. IX, C.

38. En *In re Báez Genoval,* el Tribunal Supremo de Puerto Rico estableció la relación entre los Cánones 21 y 38 del Código de Ética Profesional. En esa ocasión, concluyó que "cuando un abogado asume una representación simultánea de clientes o una representación sucesiva adversa que resulta en un real o potencial conflicto de intereses, incurre en una conducta que viola los Cánones 21 y 38 del Código de Ética Profesional". *Íd.*, pág. 39.

Si bien una violación al Canon 21 del Código Ética Profesional conlleva necesariamente una violación al Canon 38, ante una solicitud de descalificación lo que debe dirimir el tribunal es si, a la luz de la totalidad de las circunstancias, existe una apariencia de conducta impropia que justifique la descalificación de un abogado, sopesando el derecho que le asiste a todo ciudadano de escoger libremente el abogado que lo represente. Véase, *Sánchez Acevedo v. ELA,* 125 DPR 432 (1990).

### III.

Expuesto el marco jurídico y ponderados los argumentos presentados por las partes, resolvemos que no se han producido las circunstancias que exijan nuestra intervención en esta etapa de los procedimientos. Al amparo de los criterios que guían nuestra discreción, no intervendremos en la determinación recurrida. En el presente caso, los Peticionarios no han demostrado que el foro de instancia se excedió en el ejercicio de su discreción, ni que erró en la interpretación del derecho. Tampoco constató que el abstenernos de interferir en la determinación recurrida constituiría un fracaso irremediable de la justicia en esta etapa de los procesos. Por lo cual, somos del criterio que en el presente caso procede que se deniegue el recurso de *certiorari* de epígrafe.

Nuestra determinación de no intervenir en los méritos de la decisión recurrida en estos momentos no constituye una

adjudicación de la controversia existente entre las partes ni prejuzga el asunto planteado por ellas.

**IV.**

Por los fundamentos anteriormente expuestos, **denegamos** el recurso de epígrafe.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones