ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| **MERCK SHARP AND DOHME, (I.A.), LLC**<br><br>Recurrido<br><br>v.<br><br>**WHOLESALERS GROUP, INC., y otros**<br><br>Peticionario | TA2025CE00424 | ***CERTIORARI***<br>procedente del Tribunal de Primera Instancia, Sala Superior de **San Juan**<br><br>Civil Núm.:<br>**SJ2018CV01697**<br><br>Sobre:<br>Acción por Fraude de Acreedores y otros |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos

Cintrón Cintrón, Jueza Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 12 de noviembre de 2025.

Comparecen ante nos, los licenciados Juan A. Marqués Díaz (en adelante, "licenciado Marqués Díaz") y Antonio Escudero Viera (en adelante, "licenciado Escudero Viera") (en conjunto, "peticionarios" o "licenciados") y solicitan la revisión de la *Orden* pronunciada y notificada el 10 de julio de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, "TPI"). Mediante el dictamen aludido, el foro primario declaró *No Ha Lugar* la *Moción para que se Dejen sin Efecto Citaciones y Solicitud de Orden Protectora* incoada por los peticionarios.

Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* y revocamos el dictamen recurrido.

## I.

El caso de autos, iniciado en marzo de 2018, cuando Merck Sharp and Dohme, (I.A.), LLC. (en adelante, "Merck" o "recurrido")

---

[1] Véase *Orden Administrativa OAJP-2021-086* del 4 noviembre de 2021.

presentó una demanda por incumplimiento de contrato y cobro de dinero, acción rescisoria por fraude de acreedores y daños contra Wholesalers Group, Inc. h/n/c Droguería Bayamón, Inc. (Wholesalers), MAS Group, LLC. (MAS Group), Multy Medical Facilities, Corp. (Multy Medical) y otras partes, el cual tiene un extenso trámite procesal.[2] En esta ocasión, nos remitiremos únicamente a los hechos que dieron origen a la controversia que hoy atendemos.

En el pasado, los licenciados Marqués Díaz, Escudero Viera y la licenciada María C. Cartagena Cancel mantuvieron una relación abogado-cliente con Wholesalers y MAS Group que emanaba de este caso. En el 2021, el TPI relevó al licenciado Marqués Díaz y a la licenciada Cartagena Cancel de la representación legal de MAS Group.

Luego de múltiples trámites procesales, el 10 de junio de 2025, los licenciados Marqués Díaz y Escudero Viera recibieron unas citaciones por parte de Merck mediante correo electrónico. Estas les requerían la producción de ciertos documentos que, a su entender, están cobijados por el privilegio abogado-cliente. Lo anterior provocó que, el 24 de junio de 2025, los licenciados Marqués Díaz y Escudero Viera, sin someterse a la jurisdicción del Tribunal, presentaran una *Moción para que se Dejen sin Efecto Citaciones y Solicitud de Orden Protectora* ante el TPI.

En su comparecencia, los licenciados argumentaron que la citación dirigida al licenciado Marqués Díaz solicitaba la producción de documentos relacionados con MAS Group y Wholesalers, en el contexto del caso de epígrafe desde el 19 de abril de 2013. Precisaron que la referida citación requería lo siguiente:

> (1) copia del expediente completo de MAS relacionado con Merck y/o con la alegada deuda en controversia

---

[2] Entre estos trámites se encuentran varios recursos apelativos presentados ante este Foro.

en este caso, incluyendo todos los correos electrónicos intercambiados entre MAS, sus directores u oficiales y sus representantes legales;

(2) copia de cualquier declaración jurada hecha por representantes de MAS en relación con la compraventa de acciones por parte de MAS a Wholesalers;

(3) todos los documentos, grabaciones, resúmenes y/o reportes que mencionen la deuda en controversia en dicho caso, incluyendo correos electrónicos;

(4) documentos que reporten, describan, analicen, discutan o comenten la venta o transferencia de acciones de Wholesalers a MAS, incluyendo correos electrónicos;

(5) documentos, grabaciones o reportes que hagan referencia a cualquier litigio entre MAS y Merck; y

(6) copias o grabaciones de comunicaciones verbales o escritas entre cualquier director, oficial, empleado o accionista de MAS que hagan referencia a los casos *Merck Sharp & Dohme v. Wholesalers Group, Inc. et al.*, DCD2012-3082 y SJ2018CV01697.

Al mismo tiempo, adujeron que la citación al licenciado Escudero Viera abarcaba un periodo de tiempo desde el 9 de noviembre de 2012 y pedía la producción de documentos relacionados principalmente con dos (2) asuntos:

(1) la deuda en controversia en los casos *Merck Sharp & Dohme v. Wholesalers Group, Inc. et al.* (DCD2012-3082 y SJ2018CV01697), y

(2) la compraventa de acciones de Wholesalers a Mas o al Fideicomiso Ferrer-Ortiz. Entre los documentos solicitados se incluyen: declaraciones juradas, expedientes completos, certificados de incorporación, reglamentos internos, comunicaciones entre directores o empleados, y cualquier documento que analice, describa o comente los temas antes mencionados, incluyendo correos electrónicos, grabaciones o resúmenes.

Los licenciados arguyeron que las citaciones eran improcedentes, tanto en el plano procesal, como en el sustantivo, porque: (1) no cumplen con la Regla 40 de las de Procedimiento Civil, *infra*, al ser enviadas por correo electrónico y al no respetar el término mínimo provisto de veinte (20) días; (2) requieren la entrega de documentos protegidos por el privilegio abogado-cliente y la doctrina de *work product*; (3) no hay justa causa para la entrega de

documentos en el poder de los abogados porque Merck no ha probado que la información no puede obtenerse por otros medios.

El 7 de julio de 2025, Merck objetó el petitorio de los licenciados. Expuso que Escudero Viera fue secretario de Wholesalers y Marqués Díaz fue abogado de MAS Group y que, fue en calidad de esas relaciones, que se les hizo el requerimiento. Alegó que no pudieron entregar las citaciones personalmente porque estos no se encontraban en su oficina y en la recepción de su bufete se negaron a aceptarlas. Asimismo, discutió que, como las compañías que estos representaban tenían su certificado de organización cancelados en el Departamento de Estado, estas habían dejado de existir y, por ende, sus derechos y privilegios también cesaron. Es decir, que el privilegio abogado-cliente no subsiste una vez la corporación es disuelta. Ante ello, esgrimió que procedía la entrega de los documentos solicitados.

Además, Merck argumentó que en este caso existe justa causa para obtener información de un cliente en posesión de un abogado. Particularizó que uno de los demandados, el señor Juan Ortiz Negrón, accionista y/o director y/o principal oficial, tanto de Wholesalers como de Multy Medical, tanto durante el tiempo en que se acumuló la deuda a Merck, como cuando se transfirió el activo de Wholesalers a Multy Medical, trasladó sus acciones en ambas corporaciones para librarse de cualquier responsabilidad por la deuda o por la transferencia del inmueble en fraude de acreedores.

Así, Merck sostuvo que, en la actualidad, las únicas personas que pueden tener conocimiento de lo ocurrido son los abogados de los demandados y el señor Juan Ortiz Negrón, quien fue diagnosticado con demencia en diciembre de 2024. Insistió que los únicos que pueden tener información necesaria para esclarecer este caso son el licenciado Marqués Díaz, con documentos de MAS

Group, y el licenciado Escudero Viera, con los documentos que, como secretario de Wholesalers, tenga en su poder.

El 10 de julio de 2025, el foro primario declaró *No Ha Lugar* la solicitud de orden protectora, acogiendo los fundamentos de Merck, según esbozados en su oposición. Por ello, les ordenó a los licenciados cumplir con la solicitud de producción de documentos.

Insatisfechos, los licenciados Marqués Díaz y Escudero Viera solicitaron reconsideración el 15 de julio de 2025, a lo cual Merck se opuso el 7 de agosto de 2025. Mediante un dictamen emitido y notificado el 11 de agosto de 2025, el foro recurrido declaró *No Ha Lugar* la petición de reconsideración.

Aun inconformes, los licenciados comparecen ante nos mediante *certiorari*, y alegan que el foro primario cometió los siguientes errores:

> Erró el TPI y abusó de su discreción al acoger la postura de Merck en cuanto a que el privilegio abogado-cliente se extinguió con la supuesta disolución de MAS y Wholesalers. Con ello, se apartó de la Ley de Corporaciones, ignoró la doctrina aplicable y el deber ético de confidencialidad, incurriendo en un grave error de derecho que pone en riesgo la protección de las comunicaciones abogado-cliente, principio medular del ordenamiento.

> Erró el TPI al incurrir en abuso de discreción y en error manifiesto de derecho al acoger la teoría de Merck sobre la aplicación de la excepción de crimen o fraude al privilegio abogado-cliente conforme a la Regla 503(c)(1).

> En la alternativa, aun si no aplicara el privilegio abogado-cliente, erró el TPI al emitir la Orden del 10 de julio ante la falta de justa causa para requerir documentos en poder de los abogados.

> Erró el TPI al convalidar unas citaciones defectuosas en contravención al debido proceso.

Por su parte, Merck presentó su *Oposición a[l] Recurso de Certiorari* el 1 de octubre de 2025.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

## II.

### A.

El recurso de *certiorari* es el mecanismo procesal idóneo para que un tribunal de superior jerarquía pueda enmendar los errores que cometa el foro primario, sean procesales o sustantivos. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821 (2023); *León v. Rest. El Tropical,* 154 DPR 249 (2001). La Regla 52.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone taxativamente los asuntos que podemos atender mediante el referido recurso. *Scotiabank v. ZAF Corp.*, 202 DPR 478 (2019).[3]

Sin embargo, distinto al recurso de apelación, la expedición del auto de *certiorari* está sujeta a la discreción del foro revisor. La discreción consiste en una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. Ahora bien, no significa poder actuar en una forma u otra, haciendo abstracción del resto del derecho, porque, ciertamente, eso constituiría un abuso de discreción. *García v. Padró*, 165 DPR 324, 334-335 (2005).

Así, para que este Foro pueda ejercer con mesura la facultad discrecional de entender, o no, en los méritos, una petición de *certiorari,* la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR

---

[3] El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Regla 52.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1.

42, 215 DPR __ (2025), enumera los criterios que viabilizan dicho ejercicio.[4] En particular, la referida Regla dispone lo siguiente:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Los criterios antes transcritos nos sirven de guía para poder, de manera sabia y prudente, evaluar, tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada. Ello, para tomar la determinación si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio. *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 97-98 (2008). De no encontrarse presente alguno de los criterios anteriormente enumerados en un caso ante nuestra consideración, no procede nuestra intervención.

Además, es importante enfatizar que todas las decisiones y actuaciones judiciales se presumen correctas y le compete a la parte que las impugne probar lo contrario. *Vargas v. González,* 149 DPR 859, 866 (1999).

---

[4] Véase, *IG Builders et al. v. BBVAPR*, 185 DPR 307, 339 (2012).

## B.

De otro lado, las Reglas de Procedimiento Civil de Puerto Rico conceden a todas las partes en un pleito el derecho a realizar un descubrimiento de prueba. En términos generales, el propósito del descubrimiento de prueba es: (1) delimitar las controversias; (2) facilitar la consecución de evidencia; (3) evitar las sorpresas en el juicio; (4) facilitar la búsqueda de la verdad, y (5) perpetuar la prueba. *Torres González v. Zaragoza Meléndez*, supra, pág. 844, citando a R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, Sec. 2802, págs. 333-334. Véase, además, Regla 23.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 23.1; *Berríos Falcón v. Torres Merced*, 175 DPR 962, 971 (2009).

El mecanismo de descubrimiento de prueba se caracteriza por ser de alcance amplio y liberal para facilitar la tramitación de los pleitos y evitar inconvenientes, sorpresas e injusticias que surgen cuando las partes ignoran hasta el día de la vista las cuestiones y los hechos que en realidad son objeto del litigio. *McNeil Healthcare v. Mun. Las Piedras II*, 206 DPR 659 (2021); *Berríos Falcón v. Torres Merced,* supra.

Ahora bien, al descubrimiento de prueba le son oponibles dos (2) limitaciones: (1) pertinencia y (2) privilegio. *McNeil Healthcare v. Mun. Las Piedras II*, supra; *Ponce Adv. Med. v. Santiago González et al.*, 197 DPR 891, 898–899 (2017). La pertinencia se debe interpretar de manera amplia.[5] Por su parte, materia privilegiada se refiere a aquella que se encuentra dentro del alcance de alguno de

---

[5] Prueba pertinente es la que produzca o pueda producir, entre otras: [...] (a) prueba que sea admisible en el juicio; (b) hechos que puedan servir para descubrir evidencia admisible; (c) datos que puedan facilitar el desarrollo del proceso; (d) admisiones que puedan limitar las cuestiones realmente litigiosas entre las partes; (e) datos que puedan servir para impugnar la credibilidad de los testigos; (f) hechos que puedan usarse para contrainterrogar a los testigos de la otra parte; (g) nombres de los testigos que la parte interrogada espera utilizar en el juicio. *McNeil Healthcare v. Mun. Las Piedras II*, supra, pág. 674.

los privilegios reconocidos en las Reglas de Evidencia. *McNeil Healthcare v. Mun. Las Piedras II*, supra.

Debido a que los privilegios se contraponen con la búsqueda de la verdad, las reglas que los gobiernan se deben interpretar restrictivamente en relación con cualquier determinación sobre la existencia de un privilegio. Esto, con el objetivo de evitar una extensión indebida de ellos e impedir así el entorpecimiento de la consecución de la verdad. *Pagán et al. v. First Hospital*, 189 DPR 509, 518-519 (2013). Por consiguiente, los tribunales están obligados a rechazar cualquier invocación de un privilegio evidenciario cuando surjan dudas respecto a la presencia de los requisitos estatutarios exigidos para su existencia. *Íd.*, a la pág. 519.

Por otra parte, cabe destacar que, ante el hecho de que los privilegios no son automáticos, el poseedor tiene que invocarlos de forma fundamentada, pues es en él en quien recae el peso de demostrar su existencia y aplicabilidad mediante preponderancia de la prueba. *Pagán et al. v. First Hospital*, supra, a la pág. 519.

Entre los privilegios reconocidos en nuestro ordenamiento jurídico, se encuentra el de abogado-cliente, regulado por la Regla 503 de las Reglas de Evidencia[6]. Veamos lo que allí se dispone:

> [...]
>
> (b) [...] el o la cliente —sea o no parte en el pleito o acción— tiene el privilegio de rehusar revelar, y de impedir que otra persona revele, una comunicación confidencial entre ella y su abogada o abogado. El privilegio puede ser invocado no solo por quien lo posee —que es la persona cliente— sino también por una persona autorizada a invocarlo en beneficio de esta, o por la abogada o el abogado a quien la comunicación fue hecha si lo invoca a nombre de y para beneficio de la que es cliente. Regla 503(b) de las Reglas de Evidencia, supra.

---

[6] 32 LPRA Ap. VI, R. 503.

Para aclarar el alcance de dicho privilegio, la propia regla define varios conceptos: a saber:

(1) Abogada o abogado. - Persona autorizada o a quien el o la cliente razonablemente creyó autorizada a ejercer la profesión de la abogacía en Puerto Rico o en cualquier otra jurisdicción; incluyendo a sus asociadas, ayudantes y empleadas.

(2) Cliente. - Persona natural o jurídica que, directamente o a través de representante autorizado, consulta a una abogada o a un abogado con el propósito de contratarle o de obtener servicios legales o consejo en su capacidad profesional. Incluye a la persona incapaz que consulta a una abogada o a un abogado o cuyo tutor, tutora o encargada hace tal gestión con la abogada o el abogado a nombre de la persona incapaz.

(3) Representante autorizado. - Persona facultada para obtener servicios legales o actuar a base de consejo legal ofrecido, en representación de la que es cliente. Incluye a una persona que, con el propósito de que se brinde representación legal a quien es cliente, hace o recibe una comunicación confidencial mientras actúa dentro del alcance de su empleo con el o la cliente.

(4) Comunicación confidencial. - Aquélla habida entre una abogada o un abogado y su cliente en relación con alguna gestión profesional, basada en la confianza de que no será divulgada a terceras personas, salvo a aquéllas que sea necesario para llevar a efecto los propósitos de la comunicación.

Regla 503(a) de las Reglas de Evidencia, *supra.*

Es claro que el aludido privilegio procura estimular la confianza del cliente hacia su abogado, para que este brinde, sin preocupación alguna, toda la información necesaria en aras de recibir una adecuada asistencia legal. *Pagán et al. v. First Hospital,* supra, a la pág. 520. Ante la definición del privilegio y el objetivo por él perseguido, el Tribunal Supremo de Puerto Rico, citando con aprobación al profesor Wigmore, precisó los elementos esenciales del privilegio abogado-cliente de la siguiente manera*:* (1) cuando se procure un consejo legal de cualquier naturaleza; (2) de parte de un abogado, actuado en su capacidad como tal; (3) las comunicaciones hechas relacionadas a ese propósito; (4) en confidencia; (5) por un cliente; (6) estarán protegidas

permanentemente a sus instancias; (7) de ser divulgadas por él o su abogado; (8) excepto cuando haya renunciado a tal protección. (Citas omitidas). *Íd.*, a la pág. 522.

Respecto al elemento "cliente", este puede ser una persona natural o jurídica. Ahora bien, cuando auscultamos esta figura en el ámbito de una corporación, es importante poder determinar quién se considera representante autorizado para la evaluación del privilegio abogado cliente. Ante la compleja tarea que ello representa, en *Pagán et al. v. First Hospital*, supra, nuestro Tribunal Supremo aclaró este particular:

> [...] podemos concluir que en Puerto Rico no aplica el estándar de la prueba del grupo-control (*Control Group Test*). Esto en función de nuestra codificación expresa de *Upjohn Co. v. United States*, supra, en nuestra Regla 503(a) de Evidencia, *supra*. Consecuentemente, el privilegio abogado-cliente no está limitado a las comunicaciones que ofrezcan los oficiales y empleados de las altas esferas de la corporación encargados de diseñar la política corporativa. Al contrario, hoy adoptamos el estándar sugerido en el caso federal nombrado, el cual se asemeja a la prueba de materia (*Subject Matter Test*). Así, un empleado será un representante autorizado del cliente (la corporación), siempre y cuando: (1) haya ofrecido sus comunicaciones al abogado corporativo para asegurar asesoría legal a la corporación; (2) las comunicaciones estaban relacionadas con las funciones y tareas corporativas específicas del empleado y este era consciente de que el abogado lo consultaba para que la corporación pudiese ser asesorada legalmente, y (3) la corporación trató sus comunicaciones confidenciales por instrucciones de los gerentes de la empresa. *Íd.*, a la pág. 531.

De otra parte, el privilegio del producto del trabajo o la labor del abogado (*work product*), el cual se encuentra fuera del ámbito del descubrimiento de prueba, ha sido descrito por nuestro más Alto Foro en *Ades v. Zalman,* 115 DPR 514, 525, n. 3 (1984) de la siguiente manera:

> El producto de la labor del abogado consiste en aquella información que él ha reunido y sus impresiones mentales, teorías legales y estrategias que persigue o ha adoptado, derivadas de entrevistas, declaraciones, memorándums, correspondencia, resúmenes, investigaciones de hechos o de derecho, creencias personales y otros medios tangibles o intangibles. *State*

*ex rel. Dudek v. Circuit Court for Milwaukee County,* 150 N.W.2d 387 (1967). ...

El propósito de la doctrina del *work product* es establecer una protección contra el descubrimiento de prueba al que tiene derecho la parte adversa, para que el abogado pueda desarrollar las estrategias del caso en una atmósfera de privacidad básica y libre de intromisiones innecesarias con sus procesos mentales. Al validar esta doctrina, el Tribunal Supremo de los Estados Unidos procuró proteger el trabajo del abogado, particularmente en lo que se refiere al diseño de estrategias y la elaboración de teorías legales, lo cual incluye memorandos y entrevistas. Chiesa Aponte, Ernesto Luis, *Tratado de Derecho Probatorio*, Publicaciones J.T.S. San Juan, 1998, págs. 236-237.

En consonancia con lo anterior, es menester apuntalar que los tribunales tienen el deber de asumir un rol activo desde el albor del pleito, por lo que es recomendable que en la etapa del descubrimiento de prueba también intervengan y lo encaucen. Ello, con el objetivo de garantizar un proceso judicial justo, rápido y económico. *Lluch v. España Service Sta.,* 117 DPR 729, 744 (1986). Así, los foros primarios gozan de amplia discreción para regular el descubrimiento de prueba, por lo que los foros apelativos no deben intervenir con dicha discreción, salvo que medie prejuicio, parcialidad o error manifiesto en la aplicación de una norma procesal o sustantiva. *McNeil Healthcare v. Mun. Las Piedras II*, supra, pág. 672; *Cruz Flores et al. v. Hosp. Ryder et al.*, 210 DPR 465, 497 (2022), citando a *Lluch v. España Service Sta.*, supra, pág. 745.

### III.

En la presente causa, los peticionarios esencialmente alegan que la decisión del TPI es incorrecta en derecho.

Los peticionarios sostienen que la alegación del recurrido sobre la extinción del privilegio abogado-cliente carece de base legal y contradice la ley aplicable. En esa dirección, arguyen que: (1) el privilegio concernido está vigente, pues, mientras subsiste la actividad de litigio, la entidad disuelta conserva personalidad jurídica limitada y sigue siendo titular del privilegio abogado-cliente; (2) la cancelación de los certificados expedidos por el Departamento de Estado de Puerto Rico no equivale a un certificado de disolución, ni extingue de pleno derecho todas las obligaciones legales y éticas vinculadas a la relación abogado-cliente y (3) el privilegio abogado-cliente subsiste por normas éticas de rango superior, como el deber de confidencialidad.

Además, los peticionarios aducen que la pretensión del recurrido de invocar la excepción de crimen o fraude bajo la Regla 503(c)(1) de Evidencia, fracasa por incumplir con la Regla 7.2 de Procedimiento Civil, sobre una exposición detallada de circunstancias específicas. Argumentan que la decisión recurrida afecta directamente la confidencialidad y el deber ético de los abogados de proteger las comunicaciones con sus clientes, exponiéndolos a un riesgo indebido de divulgación de información basada en alegaciones vagas e infundadas. Añaden que el TPI pasó por alto los estándares legales y de prueba establecidos para la excepción de crimen o fraude, imponiendo una interpretación errónea que debilita la seguridad jurídica y el respeto a las garantías procesales en casos que involucran privilegios fundamentales como es el abogado-cliente.

En la alternativa, los peticionarios esbozan que, aun si no se aplicara el privilegio invocado, la solicitud masiva realizada por el recurrido es desproporcionada e invasiva, además de que no se logró justificar. Entienden que la verdadera intención del recurrido es explorar todo el expediente de la representación legal de MAS Group

y Wholesalers, sin restricción ni filtro alguno, violentando así la doctrina del *work product* y el privilegio abogado-cliente. Por último, los peticionarios esgrimen que el recurrido incumplió con la Regla 40 de Procedimiento Civil, por lo que el foro *a quo* erró al convalidar las citaciones defectuosas en contravención al debido proceso de ley.

Por su parte, el recurrido esencialmente esboza que, tanto a MAS Group, como a Wholesalers, se les canceló el certificado de incorporación el 30 de diciembre de 2023, porque no habían presentado informes anuales desde el año 2018, y luego de proveerles el término de sesenta (60) días para cumplir con la radicación del informe anual y pagar los derechos, según provee el Artículo 15.02 de la Ley Núm. 164-2009, según enmendada, conocida como la *Ley General de Corporaciones de 2009* (Ley de Corporaciones), 14 LPRA sec. 3501 *et seq.* Entiende que, una vez el Departamento de Estado canceló sus certificados de incorporación, terminó su existencia corporativa y cesó el derecho a invocar el privilegio de abogado-cliente.

Asimismo, el recurrido reitera que la información que puedan tener los peticionarios, abogados de las corporaciones MAS Group y Wholesalers, pueden ayudar en el descubrimiento de prueba, al ser los únicos que quedan en este caso con algún conocimiento de los hechos. Además, insiste en que existe justa causa para que los peticionarios produzcan la información solicitada. Por último, razona que la *Orden* del foro de instancia es adecuada.

Aunque el pronunciamiento recurrido es un asunto de manejo de caso que descansa en la sana discreción del Tribunal, el marco fáctico presentado, junto a la complejidad y extensión del caso, ameritan nuestra intervención. Además, la etapa de los procedimientos en la que se presenta el caso es la más propicia para su consideración.

Al ordenar a los peticionarios cumplir con la solicitud de producción de documentos solicitada por el recurrido, el TPI otorgó una amplitud excesiva al descubrimiento de prueba que no se atemperó con los privilegios evidenciarios. Resulta evidente que la información requerida por el recurrido pudiera incluir materia privilegiada, no sujeta a ser divulgada, conforme al deber ético que permea en una relación abogado-cliente. Lo anterior, aun cuando el certificado de incorporación de MAS Group y Wholesalers fuera revocado por el Departamento de Estado.

A nuestro juicio, el recurrido no demostró justa causa para su petitorio y tampoco que la información que desea obtener por conducto de los peticionarios no puede ser adquirida por otros medios menos onerosos o, incluso, a través de otras personas. Del recurrido no tener éxito, procede que el TPI ejerza un rol activo en el descubrimiento de prueba y delimite puntillosamente los documentos que pueden ser divulgados por parte de los peticionarios, salvaguardando toda materia privilegiada.

Ante las disposiciones de la Regla 52.1 de Procedimiento Civil, *supra*, y la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, expedimos el auto de *certiorari* y dejamos sin efecto la *Orden* impugnada, con el fin de evitar un fracaso de la justicia.

**IV.**

Por los fundamentos expuestos, *expedimos* el auto de *certiorari* y *revocamos* el dictamen recurrido.  En consecuencia, devolvemos el caso al TPI para la continuación de los procedimientos, conforme a lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la Secretaria. La Juez Barresi Ramos concurre sin opinión escrita.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones